\

**Reversed and Remanded and Opinion filed December 20, 2011.**



**In The**

**Fourteenth Court of Appeals**

_____

**NO. 14-11-00037-CR**

_____

**CHIDIEBELE GABRIEL OKONKWO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 09-DCR-052539**

## O P I N I O N

Appellant Chidiebele Gabriel Okonkwo was convicted of forgery. Punishment was assessed at three years' community supervision. In a single issue, appellant contends that he was denied effective assistance of counsel. We reverse and remand.

Appellant is a Nigerian-born engineer with a masters degree from an American university. At the time of trial, he worked for a large oilfield services company and

someday aspired to return to his home country and establish his own business. In an effort to build his reputation and cultivate good will, he often acted as a proxy for friends and acquaintances in Nigeria by purchasing merchandise in the United States and shipping it to them at no profit to himself. Even after shipping and duty fees, the merchandise was cheaper and of better quality than if purchased from Nigerian retailers. The merchandise ranged from books and beddings to bigger ticket items such as cars and SUVs. Appellant kept a separate bank account to receive wire transfers from Nigeria to pay for these items.

In May 2009, appellant was contacted by a Nigerian man who requested help in making a number of purchases in the United States. Appellant did not know the man, who called himself Baba Tunde, but because appellant was accustomed to helping unfamiliar parties, he agreed to assist. Baba Tunde asked that appellant purchase a car and redirect funds to various businesses to which he was indebted. Rather than wire money to appellant's bank account, Baba Tunde preferred to deliver it by mail to appellant's home address. Appellant was reluctant to deal in cash, but approximately one month after their conversation, a box arrived at his front door, stuffed with nearly sixty thousand dollars of what appeared to be authentic United States currency.

Appellant grew concerned about the shipment. He was afraid of losing such a large sum of money and he feared the damage such a loss would cause to his reputation. He was also apprehensive that the money may have come from drug dealers or some other illegal source.

The day after the money arrived, appellant received a phone call from Baba Tunde, inquiring as to whether his package had been delivered. Baba Tunde asked that appellant deposit all of his money in the bank. Appellant was concerned with how that would be perceived, and he asked that Baba Tunde make arrangements to have the shipment returned. Pleading, Baba Tunde claimed that the funds had to be sent in cash because his Nigerian bank would not approve the wire transfer. Baba Tunde also stressed that he had already made arrangements for certain purchases from American companies and that the

2

deposit had to be made soon because a deadline from those companies was fast approaching. Appellant refused to conduct any dealings with his bank, but upon Baba Tunde's suggestion, he agreed to purchase a series of money orders on Baba Tunde's behalf.

To ensure that the money was indeed valid, appellant stopped at a Wal-Mart on his way home from work and purchased a currency detector pen. The pen is designed to identify authentic and counterfeit bills. When marked on genuine currency, the pen's ink remains a yellowish hue, but on all other surfaces, the ink turns black or brown. When appellant returned home, he tested the pen on a random sampling of bills from Baba Tunde's shipment. When the ink remained yellow, appellant was "left with no doubt that this money is good money."

Believing his money was authentic, appellant returned to the Wal-Mart and requested a money order in the amount of five thousand dollars. The clerk informed him that money orders were limited to one thousand dollars per customer. Appellant agreed to purchase one for $852. The clerk tested appellant's money with a similar currency detector pen; when it passed, the money order was issued.

Appellant then traveled to a nearby Kroger grocery. In similar fashion, he requested a money order in the amount of $568. His bills were marked with a pen, and the money order was successfully issued.

Later that same day, appellant went to his local H-E-B to request a third money order. The clerk at H-E-B refused to issue the money order, telling appellant that his money did not appear to be valid. Undeterred, appellant requested that the clerk test another set of bills he believed to be authentic. While he waited, police were called to the scene. Appellant cooperated with their investigation. He revealed that he had more money in the glove compartment of his car, which he freely allowed the police to search. Appellant was then arrested on suspicion of passing counterfeit bills.

3

During trial, a number of witnesses testified as to the authenticity of appellant's money, including an agent from the United States Secret Service. This evidence demonstrated that appellant's money was indeed counterfeit. The clerk from H-E-B testified that the bills had an unfamiliar texture, almost like sandpaper, and that they smelled of kerosene. The Secret Service agent furthered testified that many security features in authentic currency were missing from appellant's collection of bills. The discrepancies included the following: (1) the denomination ribbon was printed, rather than embedded, and it was visible without having to hold the bill towards the light; (2) many of the bills had the exact same serial number, when they should have been unique; (3) the bills appeared to have glittered nail polish that smeared when touched, rather than official "OVI ink" that shifts colors depending on the manner in which the bill is held; (4) the bills lacked red and blue security fibers; (5) the treasury seal was printed without its customary sharp, clean lines; (6) the watermark bearing the picture of the president or historical figure appeared "cartoonish" and stamped, rather than engrained in the paper; and (7) the bills contained blurred or missing microprint. Despite all of these failings, appellant's arresting officers stated, "These are pretty damn good fakes," and "Man, this is good work."

Appellant's sole defense was that he honestly believed the bills to be genuine. Defense counsel, however, failed to request that the jury receive an instruction on appellant's mistake of fact. *See* Tex. Penal Code Ann. § 8.02 (West 2010). After receiving his verdict, appellant filed a motion for new trial, arguing that his assistance from trial counsel was ineffective in violation of the Sixth Amendment to the United States Constitution. Attached to the motion was the affidavit of trial counsel, who described his representation in these words:

> At the close of the evidence in this matter, I did not request that the trial court instruct jurors on the statutory defense of mistake of fact as set out in Section 8.02(a) of the Texas Penal Code. My failure to do so was not the result of trial strategy or tactic. At the time for formulating the jury charge, it did not occur to me to request a charge on the statutory defense of mistake of fact,

even though the evidence adduced at trial was clearly more than a scintilla of evidence tending to raise the statutory defense of mistake of fact.

Appellant's motion for new trial was denied. This appeal followed.

In his only issue, appellant argues that he was denied effective assistance of counsel because trial counsel failed to request a jury instruction on his mistake-of-fact defense. We review this issue under the familiar standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, appellant must prove that (1) his trial counsel's representation was deficient, and (2) the deficient performance was so serious that it deprived appellant of a fair trial. *Id.* at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. This deficiency will only deprive appellant of a fair trial when counsel's performance prejudices appellant's defense. *Id.* at 691–92. To demonstrate prejudice, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. This test is applied to claims arising under both the United States and Texas Constitutions. *See Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).

As a reviewing court, we look to the totality of the representation and to the circumstances of the case, not to isolated instances in the record reflecting errors of omission or commission. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Moreover, we consider the adequacy of assistance as viewed at the time of trial, rather than through hindsight. *Id.* at 482. Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Accordingly, we do not speculate as to the reasons supporting counsel's behavior. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). Any allegation of ineffectiveness must be firmly founded in the record, and the

record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

To obtain a conviction for forgery, the State was required to prove that appellant forged a writing with intent to defraud or harm another. *See* Tex. Penal Code Ann. § 32.21(b). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). Appellant's defense was that he lacked the intent to defraud because he was mistaken as to the authenticity of the bills. The record contains probative evidence to support appellant's mistaken belief. The currency detector pen provided some indication that the bills were legitimate, and prior to his arrest, bills from the same shipment had already passed inspection from two money order retailers. The State maintained, however, that appellant was laundering bills he knew to be counterfeit. During closing argument, the prosecutor insisted, "He was turning illegitimate money, forged writing, money, to real money, which was going to be backed by the money order." The evidence accordingly raised a fact issue for the jury to resolve.

An accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996); *Miller v. State*, 312 S.W.3d 209, 212 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). This rule ensures that the jury, not the judge, decides the credibility of the evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999).

Among the defenses available to the accused, "[i]t is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken

belief negated the kind of culpability required for commission of the offense." Tex. Penal Code Ann. § 8.02(a). The evidence in this case was more than sufficient to support a mistake-of-fact instruction. Had the instruction been requested, it would have been given. *Cf. Green v. State*, 899 S.W.2d 245, 248 (Tex. App.—San Antonio 1995, no pet.) (holding that mistake-of-fact instruction was warranted in theft case where the accused testified that he paid for merchandise under the belief that he had sufficient funds in his checking account).

In his affidavit, trial counsel attested that his failure to request the mistake-of-fact instruction was "not the result of trial strategy or tactic." This failure fell below an objective standard of reasonableness, rendering counsel's performance constitutionally deficient. In determining whether this deficiency prejudiced appellant's defense, we must decide whether there is a reasonable probability that the result of the proceeding would have been different but for counsel's error. *See Strickland*, 466 U.S. at 694. Because mistake of fact was appellant's only defense, we conclude there is a probability sufficient to undermine confidence in the outcome. *See Green*, 899 S.W.2d at 248 ("For the jury not to be given the only law raised by his defense that would have favored defendant's theory of the case is catastrophic."); *Taiwo v. State*, No. 01-07-00487-CR, 2010 WL 2306040, at *5–6 (Tex. App.—Houston [1st Dist.] June 10, 2010, pet. ref'd) (mem. op., not designated for publication); *see also Anderson v. State*, 11 S.W.3d 369, 375 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding that defendant was harmed where jury charge omitted a mistake-of-fact instruction, depriving him of the right to have the jury consider his only defense).

The State argues that counsel was not ineffective because a mistake-of-fact instruction was unnecessary. Under the jury charge, the prosecution carried the burden of proving every element of the offense. The State contends that because the jury was instructed to consider all of the evidence, the jury could not have convicted appellant without necessarily rejecting his testimony that he believed the bills to be authentic. The

State relies upon *Bruno v. State*, a decision suggesting that a mistake-of-fact instruction is not required when the jury must choose between two conflicting witness statements. *See Bruno v. State*, 845 S.W.2d 910, 913 (Tex. Crim. App. 1993) (plurality opinion).

As a plurality opinion, *Bruno* is not binding on this court. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999) (noting that a plurality opinion has no precedential value). We also observe that the part of *Bruno* on which the State relies is actually dicta. A mistake-of-fact instruction was given in *Bruno*; the issue for the court to decide was whether the charge somehow lessened the prosecution's burden of proof. *See id.* at 911–12; *see also Sands v. State*, 64 S.W.3d 488, 494 (Tex. App.—Texarkana 2001, no pet.) ("Also, the comments in the plurality opinion in *Bruno* are dicta because an instruction on mistake of fact was given and the issue in the case was whether the charge properly placed the burden of proof on the State.").

More importantly, *Bruno* did not hold, as the State suggests here, that a mistake-of-fact instruction is unnecessary simply because the jury is charged to consider all of the evidence. The *Bruno* plurality merely held that an instruction may not be required in a narrow subset of theft cases. In *Bruno*, for instance, the defendant was charged with unauthorized use of a motor vehicle. *Bruno*, 845 S.W.2d at 911. The defendant testified that the owner of the vehicle gave him permission to use her car, believing she wanted him to buy her some drugs. *Id.* The owner testified that the defendant forcefully grabbed the keys from her hand and made off with her vehicle. *Id.* The *Bruno* plurality held that where only one of two versions could be true, a mistake-of-fact instruction was unnecessary because a conviction could be had only if the jury disbelieved the defendant's testimony. *Id.* at 913; *accord Hopson v. State*, No. 14-08-00735-CR, 2009 WL 1124389, at *3–5 (Tex. App.—Houston [14th Dist.] Apr. 28, 2009, no pet.) (mem. op., not designated for publication) (applying *Bruno* in burglary case where defendant testified that she had owners' permission to remove their television from their home and where owners claimed they had never met the defendant before); *see also Bruno*, 845 S.W.2d at 912 (recognizing

8

that mistake-of-fact instruction would be warranted on fact pattern where jury is not forced to accept only one of two witness statements, citing *Gardner v. State*, 780 S.W.2d 259 (Tex. Crim. App. 1989)).

The jury in this case was not presented with two conflicting witness statements. Appellant testified that he believed the currency to be genuine; the State called no witness who affirmatively repudiated his understanding of the facts. Although the bills contained many deficiencies, evidence showing that they were counterfeit speaks only to the reasonableness of appellant's claimed belief; it does not contradict the belief itself. Unlike *Bruno*, the jury here was not required to accept only one of two conflicting versions. Based on this record, we adhere to the general rule that "the accused is entitled to an *affirmative* submission of every defensive issued raised by the evidence." *Montgomery v. State*, 588 S.W.2d 950, 953 (Tex. Crim. App. [Panel Op.] 1979).

We sustain appellant's sole issue, reverse the judgment of the trial court, and remand for a new trial.


/s/         Adele Hedges
            Chief Justice


Panel consists of Chief Justice Hedges and Justices Boyce and Christopher.

Publish — Tex. R. App. P. 47.2(b).

9