

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0207-12

**CHIDIEBELE GABRIEL OKONKWO, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### FORT BEND COUNTY

COCHRAN, J., filed a concurring opinion in which JOHNSON and HERVEY, JJ., joined.

## O P I N I O N

I join in the Court's opinion. I agree that appellant's trial attorney was not ineffective for failing to request a jury instruction on the statutory mistake-of-fact defense for two distinct reasons: (1) It is not at all clear that appellant was entitled to any instruction on mistake of fact, and (2) The jury instruction that the trial judge gave was more favorable to appellant's defensive theory than an instruction on the statutory mistake-of-fact defense would have been. Furthermore, appellant cannot show prejudice even if his counsel should

have requested such an instruction because the jury rejected the more defense-friendly theory of appellant's honest, if stupid, mistaken belief in the authenticity of the bills.

Appellant was a Nigerian engineer who worked for a large oilfield company in the Houston area. He testified that he had been sent $60,000 in cash in a newspaper-wrapped box by a fellow Nigerian named Baba Tunde. Appellant did not know Baba Tunde, but that stranger wanted him to deposit the cash in appellant's bank. Appellant refused to get his bank involved, but he agreed to purchase a series of money orders for Baba Tunde instead.

First, appellant stopped at a nearby Wal-Mart and bought a currency detector pen which, he said, is designed to distinguish authentic bills from counterfeit ones. When he tested it on some of the bills, the pen's ink remained a yellowish hue, which indicated that the bills were authentic.[1] Then appellant went back to Wal-Mart and bought a money order for $852. The clerk tested appellant's cash with a currency detector pen, and the ink remained yellowish, so the clerk completed the sale. Appellant then went to a nearby Kroger and bought another money order, this one for $568. Once again, the clerk used a pen detector, and once again the cash passed this test. At the third store, an H-E-B, the clerk refused to issue the money order and told appellant that the currency did not look real.[2] Appellant then suggested that the clerk try some other bills with his pen, but the clerk called

---

[1] According to appellant, the pen's ink turns black or brown when marked on any surface other than authentic U.S. currency bills.

[2] Secret Service agents testified that a number of special security features that are contained in authentic bills were missing in appellant's currency.

the police. Appellant cooperated with the police, told them there was more currency in his car's glove compartment, and helped them gather it up. Appellant was arrested on suspicion of passing counterfeit money.

Appellant's sole defensive theory was that he "honestly believed the bills to be genuine."[3] Maybe he was dumb not to realize that the bills were forgeries, but he did not intend to harm or defraud anyone. His theory was explicitly set out in the application paragraph of the jury instructions, which required the State to prove that appellant

> unlawfully and with intent to defraud and harm another, possess[ed] a forged writing, namely money, and [appellant] possessed the writing with the intent to pass the writing and *with knowledge that the writing was forged*[.]

Under these jury instructions, if the State did not prove, beyond a reasonable doubt, that appellant *knew* that the money was counterfeit, then the jury was required to find him not guilty. It would not matter if appellant were reckless or negligent in his belief that the money was genuine, because even a patently unreasonable belief, if honestly held, negates the culpable mental state of "knowing that the writing was forged."[4] This was the defensive

---

[3] *Okonkwo v. State*, 357 S.W.3d 815, 818 (Tex. App.–Houston [14th Dist.] 2012).

[4] *See Green v. State*, 221 S.W.2d 612, 616 (Tex. Crim. App. 1949) (op. on reh'g) (farmer who killed hogs that he mistakenly believed belonged to him was not required to show that his mistake was reasonable because "[a]n intent to steal property and a bona fide claim of right to take it are incompatible. One who takes property in good faith, under fair color of claim or title, honestly believing that he is its owner and has a right to its possession or that he has a right to take it, is not guilty of larceny even though he is mistaken in such belief, since in such case the felonious intent is lacking"; defendant's mistake negated the essential element of "intent to steal," therefore, jury should not have been instructed that it could acquit only if defendant's mistaken claim of ownership was reasonable as well as in good faith) (internal quotation marks omitted).

theory and this is what defense counsel stressed in his closing argument, noting that even the police said, "These are pretty damn good fakes[.]"

> So this is not a case where there was an obvious bell that should have gone off that these are definitely fake.  Now, that being said, clearly Mr. Okonkwo was reckless. Clearly, he was negligent. . . [but] Mr. Okonkwo's guilt does not–is not proven by showing recklessness or negligence.  It's only proven by showing intent.  And recklessness and negligence fall far short of intent.

Counsel admitted that it was "unusual and out of the ordinary" to think that someone would send $60,000 in cash through the mail from Nigeria to Texas, but his "lack of common sense" did not mean that he intended to defraud or harm anyone when he tried to buy a money order at the H-E-B.  Counsel stressed that

> [y]our sole duty and your oath is to consider the question of whether [appellant] acted with intent to defraud or harm another by passing counterfeit money that he knew was counterfeit.  You can't . . . intend to act to defraud or harm another with currency that you don't know is counterfeit.

The prosecutor argued that appellant knew full well that the money was counterfeit:

> There's something wrong here, ladies and gentlemen, when you have this much money from someone you don't know, from someone who tells you, I need you to purchase things for me, but I can't purchase them; I need you to buy money orders.  We're not saying he was in cahoots with the guy.  We don't even know if this guy really does exist, but what we do know is, he received a package with this much money.
>     And the defendant, ladies and gentlemen, *knew*.  How can you not know?  And that whole talk about not having any common sense doesn't matter here, ladies and gentlemen.

The jury rejected appellant's theory that he did not know that the money was counterfeit and that he was honestly mistaken about its authenticity.

In his motion for new trial and on appeal appellant argued that his counsel was

ineffective for failing to ask for a jury instruction on the statutory defense of mistake of fact. That defensive instruction would have required the jury to believe both that (1) appellant honestly believed that the bills were authentic *and* (2) his belief was a reasonable one that the ordinary, prudent person would have held under the same circumstances.[5] Obviously the jury would have rejected that two-pronged theory because they had rejected the first prong–that appellant honestly believed the bills were authentic.

**A.    Counsel's Conduct Was Not Constitutionally Deficient Because the Law on Appellant's Entitlement to an Instruction on the Statutory Defense of Mistake of Fact is Unsettled.**

First, it is far from certain that appellant was entitled to an instruction on the statutory defense of mistake. The elements of forgery applicable in this case are:

(1)    The defendant;

(2)    acting with the intent to defraud or harm another;

(3)    possesses a writing that is forged [counterfeit bills];

(4)    with the intent to pass it.[6]

The statute does not explicitly require the defendant to know that the writing is counterfeit because the legislature did not attach a culpable mental state to the status of the forged

---

[5] TEX. PENAL CODE § 8.02(a) ("It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense."); *see Mays v. State*, 318 S.W.3d 368, 383 (Tex. Crim. App. 2010) ("The statutory mistake-of-fact defense explicitly requires that the defendant's mistaken belief about the existence of a fact is a 'reasonable' one 'that would be held by an ordinary and prudent man in the same circumstances as the actor.'").

[6] TEX. PENAL CODE § 32.21(a)(1)(C), (b).

writing.  In *Baker v. State*,[7] this Court noted that the current forgery offense is a combination

of two former penal provisions: the act of forging a writing with the intent to defraud

another, and the act of passing a forged writing to another knowing that the writing was

forged.[8]  The Court in *Baker* then quoted another forgery case in which we had stated,

> While the requisite culpable mental state under Sec. 32.21(b) [the forgery statute] is "intent to defraud or harm," we fail to perceive how such culpable mental state can be shown absent proof of knowledge that the instrument is forged.[9]

And, based on that reasoning, we and other Texas courts have simply added a culpable

mental state of "knowing" that the writing was forged in all cases.[10]

---

[7] 552 S.W.2d 818, 820 (Tex. Crim. App. 1977).

[8] *Id.*  (citing Article 979 of the former Penal Code setting out the offense of forgery as the making of a false instrument in writing, purporting to be the act of another, with the intent to injure or defraud and Article 996 which required proof that "(1) a person must pass as true (2) a forged instrument in writing (3) knowing that it was forged at the time of the passing.").

[9] *Id.* (quoting *Stuebgen v. State*, 547 S.W.2d 29, 32 (Tex. Crim. App. 1977)).

[10] *Pfleging v. State*, 572 S.W.2d 517, 519-20 (Tex. Crim. App. 1978) ("[T]he State proved that the instrument was in fact forged, but there is no evidence, circumstantial or otherwise, to show the appellant's knowledge that the instrument was forged or that the instrument was passed with intent to defraud or harm."); *see also Crittendon v. State*, 671 S.W.2d 527, 528 (Tex. Crim. App. 1984) (evidence was insufficient to prove that defendant knew that the check he presented was forged and thus that he intended to harm or defraud another); *Solis v. State*, 611 S.W.2d 433, 434 (Tex. Crim. App. 1981); *Hill v. State*, 608 S.W.2d 932, 934 (Tex. Crim. App. 1980); *Landry v. State*, 583 S.W.2d 620, 621 (Tex. Crim. App. 1979).
        However, a good argument can be (and has been) made that "knowledge" of the forgery is not a required element of the offense if the State can otherwise prove an intent to defraud or harm.  *See Jones v. State*, 545 S.W.2d 771, 777-78 (Tex. Crim. App. 1975) (op. on reh'g) ("[W]e hold that an indictment or information for forgery which fails to allege knowledge as an essential element is not fundamentally defective. However, because knowledge that the instrument is forged is an element which is strongly implied in the statutory definition of forgery, we hold that its absence in an indictment is a matter which may be raised by a motion to quash, but may not be raised for the first time after trial has commenced."); *id.* at 780 ("The Legislature was within

If the State must prove that the defendant "knew" that the writing he possessed and intended to pass to another was forged, then I believe that evidence of an honest, albeit unreasonable, mistake directly rebuts that knowledge and no special mistake-of-fact instruction is required.[11]  If the courts have inappropriately added a culpable mental state of "knowing that the writing was forged" when the Texas Legislature did not specify any such culpable mental state, then the statutory mistake-of-fact defense could apply[12] because a

its authority in defining the offense and repealing the forgery statutes in the former Code. It has provided that it is unlawful to pass an instrument that is forged with intent to defraud even though the person passing the instrument is unaware that it is forged provided that he intends to defraud with that instrument. This is the wrongful conduct that the Legislature has the authority to penalize. There is no need, cause or justification to add an element to the offense not provided for in the statute.") (Douglas, J., concurring); *see id*. at 781 ("In my opinion knowledge that the instrument was forged is an essential element of forgery under the mode of prosecution in this case. In the absence of such a requirement, the innocent passing of a forged check received in payment is a felony even if the recipient has no knowledge that the check was forged.") (Odom, J., dissenting).

[11] *See Celis v. State*, ___ S.W.3d ___, ___, Nos. PD-1584-11 & 1585-11, at *5-21 (Tex. Crim. App. May 15, 2013) (Cochran, J., concurring).

[12] The *Stuebgen* reasoning–it is illogical to think that a defendant could intend to harm or defraud another by passing a writing that he did not know was forged–is sensible.  I have been unable to find that reasoning rebutted by this Court in any other case.  However, the legislature is entitled to add (or not add) a culpable mental state to the forgery statute beyond that of "intent to defraud or harm."  Examining the explicit words of the forgery statute, the State need only prove that the writing is, in fact, forged; it need not shoulder the burden of production of showing that the actor knew the writing was forged.  *See Burks v. State*, 693 S.W.2d 932, 936 (Tex. Crim. App. 1985) (setting out the elements of "forgery by possession with intent to utter are (1) a person (2) 'forges' (3) a writing (4) within intent to defraud or harm (5) another.").  Evidence that establishes the actor's intent to defraud or harm carries with it the implication that the actor "knew" the writing was forged.  *See Jones*, 545 S.W.2d at 777-78.  The statute was written for the ordinary case in which those who possess a forged writing and intend to defraud or harm another surely must know that the writing is forged.  The Legislature was entitled to rely upon the "80-20 rule" in drafting a statute for the vast majority of cases in which "knowledge" of the forgery is subsumed by an intent to defraud or harm another.  Thus, the State need not, as part of its initial burden of production and proof, independently prove the actor's knowledge that the

reasonable belief that the writing (or, as in this case, the currency) is authentic, "negates the kind of culpability required by the offense."[13]  If the actor's mistaken belief were true–the money was authentic–he would be acting lawfully and not be guilty of any offense.[14]  But the drawback is that the actor must offer proof that his mistake was a reasonable one that an ordinary prudent person would likely make under the same circumstances.[15]

The law is unsettled on this precise issue, although it seems that the overwhelming weight of cases have held that the State is required to prove, as an element of its case, that the actor actually knew that the writing he possessed was forged.[16]  If so, appellant was not

---

writing was forged.  If the actor claims that his is an unusual case in which he does not know that the writing he possesses is forged, that is precisely the situation for which the statutory defense of mistake of fact was enacted.  The actor may raise that defense with some evidence of his reasonable belief that the writing is authentic and then the State must shoulder the burden of proof to establish either that the actor did, in fact, know the writing was forged or the actor's belief in the writing's authenticity was unreasonable.

[13] TEX. PENAL CODE § 8.02(a).

[14] *See Celis v. State*, ___ S.W.3d at ___, Nos. PD-1584-11 & 1585-11, at *17 & n.45 (Cochran, J., concurring) (quoting  ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 1045 (3d ed. 1982), for the proposition that "[M]istake of fact will disprove a criminal charge if the mistaken belief is (a) honestly entertained, (b) based upon reasonable grounds and (c) of such a nature that the conduct would have been lawful and proper had the facts been as they were reasonably supposed to be.").

[15] *See Mays*, 318 S.W.3d at 383.

[16] Of course, this element is usually established by circumstantial evidence.  *See Baker* v. *State*, 552 S.W.2d 818, 820 (Tex. Crim. App. 1977) (circumstantial evidence that defendant knew check was forged was sufficient); *see also Williams v. State*, 688 S.W.2d 486, 488-90 (Tex. Crim. App. 1985) (in forgery, the culpable mental state of intent to harm or defraud requires proof of knowledge that the check is forged, but if the State proves that an actor has knowledge that a particular check is forged, proof of intent to defraud is inferred, and both knowledge and intent to defraud may be established with circumstantial evidence).

entitled to any additional instructions. But because the law is unsettled on this issue, appellant's counsel could not be found ineffective for failing to request a jury instruction on the statutory mistake-of-fact defense.[17]

## B.    Counsel's Conduct Was Not Constitutionally Deficient Because the Jury Instruction Given Was More Favorable Than an Instruction on Mistake of Fact.

The trial judge in this case instructed the jury that the State was required to prove that appellant knew that the bills he tried to pass to another were counterfeit. Under these instructions, any mistake, even a "reckless or negligent" one, would, if believed, rebut the culpable mental state and exculpate appellant.

Therefore, appellant's attorney was not ineffective when he could establish his defensive theory and obtain an acquittal merely by raising a doubt in the jury's mind that appellant honestly and sincerely believed that the currency he tried to change into a money order was authentic. He did not need to take on the additional burden of showing a second prong–required under the statutory mistake-of-fact defense–that a reasonable person in appellant's position would have believed that the currency was authentic.

Appellant's attorney urged the easier defense–an honest mistake–rather than the more onerous one–an honest *and reasonable* mistake. Given the evidence in this case–in which it is hard to argue that appellant's mistaken belief about the authenticity of the $60,000 cash

---

[17] *See Ex parte Smith*, 296 S.W.3d 78, 81 (Tex. Crim. App. 2009) (counsel may not be held to have provided ineffective assistance when the pertinent law is unsettled); *Ex parte Chandler*, 182 S.W.3d 350, 358-59 (Tex. Crim. App. 2005); *Ex parte Welch*, 981 S.W.2d 183, 184 (Tex. Crim. App.1998) ("[W]e will not find counsel ineffective where the claimed error is based upon unsettled law.").

he was sent in a newspaper-wrapped box through the mail from a stranger in Nigeria was reasonable–counsel's decision, albeit inadvertent, was a wise one given the paucity of evidence suggesting the reasonableness of appellant's belief.

## C. Assuming Counsel's Conduct Was Deficient, Appellant Has Not Proven Prejudice.

If one could assume both that appellant was clearly entitled to a jury instruction on mistake of fact and that the evidence supported a finding that appellant's mistaken belief was reasonable, then counsel's action in failing to request a jury instruction on the statutory defense of mistake of fact might be found defective. That would satisfy the first prong of the *Strickland* test,[18] but not the second prong, that of prejudice.

Here, the jury was instructed that it must acquit unless it believed, beyond a reasonable doubt, that appellant did know that the currency he gave to the H-E-B clerk to buy a money order was counterfeit. The entire closing argument by appellant's counsel was directed toward that single fact, while the prosecutor's argument stressed that appellant did know that the money was counterfeit. The jury obviously rejected appellant's claim of an honest or good-faith mistake by finding him guilty. If the jury rejected that claim, then it inexorably follows that it would have rejected the two-pronged claim that appellant made an honest mistake *and* that his mistake was a reasonable one that an ordinary prudent person in

---

[18] *Strickland v. Washington*, 466 U.S. 668 (1984); *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (*Strickland* requires defendant to show "that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense.").

his position would have likely made.  Appellant has failed to show that, even if his counsel's conduct had been deficient, there is any reasonable likelihood that the verdict would have been different had the jury been instructed on the statutory mistake-of-fact defense.[19]

Filed: May 15, 2013
Publish

---

[19] *See Strickland*, 466 U.S. at 687; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998) (to establish ineffective assistance of counsel claim, defendant must prove, by a preponderance of the evidence, that "counsel's representation fell below an objective standard of reasonableness based upon prevailing norms and that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome of the proceedings.") (citations omitted).