**Affirmed and Opinion filed December 4, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00914-CR

### EX PARTE MARTIN FASSI

**On Appeal from the County Court at Law No. 2**
**Fort Bend County, Texas**
**Trial Court Cause No. 08-CCR-137463**

## O P I N I O N

Appellant Martin Fassi appeals from the habeas court's order denying his application for a writ of habeas corpus under Article 11.072 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 (West 2005). Appellant contends the habeas court erred by finding that appellant's plea counsel rendered effective assistance of counsel, despite counsel's failure to discuss clear immigration consequences of appellant's plea in violation of *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). We hold that the habeas court did not abuse its discretion by finding that appellant failed to prove ineffective assistance of counsel, and we affirm.

# I.     BACKGROUND

Appellant was charged with possessing two ounces or less of marijuana, a Class B misdemeanor. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(1) (West 2010). He faced up to six months' confinement and a $2,000 fine. *See* TEX. PENAL CODE ANN. § 12.22 (West 2011). He retained counsel, Archibald Henderson III, who advised appellant regarding a guilty plea. On May 30, 2008, appellant pled guilty pursuant to an agreement with the State, and the trial court sentenced appellant to six months' deferred adjudication probation and assessed a $150 fine. At the time of his plea, appellant was eighteen years old, a lawful permanent resident of the United States, and a national of Argentina. He had moved to the United States with his family when he was fourteen years old.

After the United States Supreme Court issued its opinion in *Padilla v. Kentucky* concerning a plea counsel's duty to discuss immigration consequences with noncitizen defendants, appellant applied for a writ of habeas corpus and attached his own affidavit. He contended that Henderson did not discuss with him the immigration consequences of his guilty plea, and that after he returned from a trip to Argentina in 2010, he was "detained by Immigration Agents and placed in deportation proceedings due to [his] guilty plea [in] this case." The State responded, attaching affidavits from Henderson and the arresting officer, Henry Torres. The habeas court held a hearing on the application, and three witnesses testified: appellant, Henderson, and appellant's immigration attorney, Raed Gonzalez.

The court denied the application and signed findings of fact and conclusions of law, including the following:

**Findings of Facts**

. . . .

8.  Applicant was ordered to appear for deferred immigration inspection on March 10, 2010.

9.  No determination of whether Applicant is finally deportable has been made by Immigration and Customs Enforcement.

2

. . . .

14. Henderson advised Applicant that because of his status as a lawful permanent residen[t], he could face negative immigration consequences as a result of his plea of guilty in this case.

15. Henderson further advised Applicant regarding the potential immigration consequences of his plea when he read to him the paragraph in the Court's plea papers which states that "If you are not a citizen of the United States of America, your plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law."

16. Henderson also advised Applicant that there was a waiver of deportation available in cases where a defendant was convicted of a single offense of possession of marihuana under 30 grams.

17. Applicant presented a Judgment and Sentence of a conviction for possession of drug paraphernalia in a lower court, prior to his plea in this case.

18. Applicant did not inform Archibald Henderson III of his prior plea of guilty to the charge of possession of drug paraphernalia.

. . . .

21. The Court is aware of the Judge who accepted Applicant's plea, and the Court is aware that it was that Judge's strict practice to ask a defendant when taking a plea if the defendant had read and understood the plea paperwork. It is the Court's recollection and belief that the Judge would not have taken any plea where the defendant advised that he had not read the papers, or where he did not understand them, or where he expressed any doubts as to the consequences of his entering a plea of guilty.

22. . . . Applicant further made no showing that he ever questioned his attorney at the time of the plea regarding any such factors that might limit his deportation consequences.

. . . .

24. Applicant has presented no evidence that any alternative plea bargain was available in his case that would have allowed him to avoid negative immigration consequences.

25. Based on the credible affidavit of Officer Henry Torres, Applicant was the driver of a motor vehicle that was stopped by Officer Torres for committing a traffic law violation. Applicant smelled of the odor of marihuana and had flakes of marihuana on his shirt. Affiant initially denied possessing marihuana, but after his passenger admitted possessing

3

marihuana, Applicant confessed that he did in fact have marihuana in the vehicle. Officer Torres searched the vehicle and found marihuana in the vehicle as Applicant confessed. Officer Torres weighed the marihuana he believed Applicant to be in possession of, and it weighed approximately 6.5 grams.

26. Although Applicant claims that but for counsel's "failure," he would have insisted on a jury trial, the evidence of Applicant's guilt in Applicant's underlying case, was overwhelming.

. . . .

**Conclusions of Law**

. . . .

4. The United States Supreme Court's holding in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), that a criminal defense lawyer has an affirmative duty to advise a noncitizen client of the potential immigration consequences of his plea bargain is a new rule of procedure, and as such does not apply retroactively. . . .

5. The Court's written admonishment that a noncitizen defendant may be deported, denied admission or denied naturalization contained in the court's plea paperwork, which the Applicant initialed, is in compliance with Texas Code of Criminal Procedure Article 26.13.

. . . .[1]

16. To obtain relief on a claim of ineffective assistance of counsel under *Padilla*, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla*, 130 S. Ct. at 1485. In light of the overwhelming evidence of Applicant's guilt in this case, the lack of any evidence of any legal or factual defenses available to Applicant, and the potential punishment for a Class B Misdemeanor punishable by up to six months confinement in county jail and a fine up to $2,000, it would not have been rational under the circumstances to reject the plea bargain for six months deferred adjudication probation.

17. . . . In light of the overwhelming evidence of Applicant's guilt and the favorable sentence negotiated by his trial counsel, Applicant has shown no prejudice in this case.

---

[1] The court concluded that the immigration consequences were not clear, succinct, and explicit, so plea counsel did not perform deficiently by advising applicant he "could" be deported rather than providing more detailed warnings or advice concerning the immigration consequences of his plea. We do not recite these conclusions verbatim because we assume for purposes of this appeal that counsel was deficient.

18. Applicant did not allege, and did not prove, by a preponderance of the evidence, the availability of any other potential plea bargain that would have allowed him to avoid potentially negative immigration consequences.

19. Because Applicant could not show the availability of any plea bargain that would have allowed him to avoid the potential negative immigration consequences incident to his plea, and because he could not show any legal or factual defense to the offense charged, he did not make a showing that it would have been rational for him to reject the plea bargain and proceed to trial.

## II.   ANALYSIS

Appellant contends that the habeas court abused its discretion by denying relief because plea counsel's advice that appellant "could face negative immigration consequences" was inadequate under *Padilla*'s requirement for plea counsel to advise noncitizen defendants of truly clear deportation consequences. The State responds that *Padilla* does not apply retroactively; counsel's advice was adequate because the deportation consequences in this case were not clear; and appellant failed to establish prejudice.

We recently rejected the State's argument concerning *Padilla*'s retroactivity. *See Aguilar v. State*, 375 S.W.3d 518, 524 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). However, we hold that the habeas court acted within its discretion by concluding that appellant failed to prove prejudice.

## A.   Habeas Corpus Standard of Review

We review a habeas court's decision on an application for a writ of habeas corpus under an abuse of discretion standard of review. *Id.* at 520. The applicant bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Id.* We consider the evidence presented in the light most favorable to the habeas court's ruling regardless of whether the court's findings are implied or explicit, or based on affidavits or live testimony. *Id.* If the resolution of the ultimate question turns on an application of legal standards, we review the issue de novo. *Id.* at 521.

5

**B. Legal Principles for Claims of Ineffective Assistance of Counsel**

To prevail on an ineffective assistance claim, an applicant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) counsel's deficiency caused the defendant prejudice—that is, there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). The applicant must prove both prongs of the test by a preponderance of the evidence; failure to establish either deficient performance or prejudice will defeat a claim of ineffectiveness. *Perez*, 310 S.W.3d at 893.

A defendant has the right to effective assistance of counsel in guilty-plea proceedings. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010). A guilty plea must represent a "'voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Aguilar*, 375 S.W.3d at 521 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "A guilty plea is not knowing or voluntary if made as a result of ineffective assistance of counsel." *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012). "Specifically, when a person challenges the validity of a plea entered upon the advice of counsel, contending that his counsel was ineffective, the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty." *Ex parte Harrington*, 310 S.W.3d at 458 (quotations omitted).

Plea counsel's performance is deficient if counsel fails to advise a noncitizen defendant about deportation consequences that are "truly clear." *See Padilla*, 130 S. Ct. at 1483; *Aguilar*, 375 S.W.3d at 524. Thus, plea counsel is deficient if counsel merely mentions the possibility of deportation when the relevant immigration provisions are presumptively mandatory. *See Aguilar*, 375 S.W.3d at 524 (citing *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011)). To establish prejudice, an applicant "must

6

convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 130 S. Ct. at 1485; *Aguilar*, 375 S.W.3d at 525. "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (per curiam).

When the prejudice prong of the *Strickland* test is dispositive, as here, we will address only that prong on appeal. *Seamster v. State*, 344 S.W.3d 592, 594 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see also Strickland*, 466 U.S. at 697. Consistent with the abuse of discretion standard of review, we give deference to the habeas court's underlying historical fact determinations, but the ultimate question of prejudice under *Strickland* is reviewed de novo. *See Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005) (reviewing denial of motion for new trial).

## C.    Evidence Properly Before the Habeas Court

As a threshold matter, we address appellant's contention that documents attached as exhibits to his habeas application and the State's response could not be considered by the habeas court because the documents were not "introduced into evidence by any party."[2]  Article 11.072 establishes the procedure in this case: "In making its determination, the [habeas] court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection." TEX. CODE CRIM. PROC. ANN. art. 11.072, § 6(b).

Because the statute does not require the habeas court to hold a hearing and allows the court to "order affidavits," the court may consider affidavits attached to the application and the State's response. *See Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.) ("[W]e find nothing in article 11.072 prohibiting the trial court from considering evidence filed with the application or with the State's response. . . .  [T]he legislature did not intend to prohibit the trial court from considering such evidence without hearing."); *see also Ex parte Rabago*, No. 14-12-00027-CR, 2012

---

[2] The documents include an affidavit from the arresting officer, Henry Torres.

WL 3678593, at *3, *5 (Tex. App.—Houston [14th Dist.] Aug. 28, 2012, no pet.) (mem. op., not designated for publication) (no error for habeas court to deny *Padilla*-based claim under Article 11.072 after considering affidavits attached to the pleadings without holding a hearing) (citing *Ex parte Davila*, 530 S.W.2d 543, 545 (Tex. Crim. App. 1975)); *Ex parte Carbajal*, No. 08-03-00297-CR, 2004 WL 1772113, at *8 (Tex. App.— El Paso Aug. 5, 2004, pet. ref'd) (mem. op., not designated for publication) ("[E]vidence in the form of affidavits is clearly permissible under 11.072 . . . .").

Similarly, we find nothing in Article 11.072 requiring the habeas court to disregard evidence attached to the habeas application or the State's response when the court holds an evidentiary hearing. We conclude that the habeas court was entitled to consider such evidence.

### D.    No Prejudice

We must determine whether appellant proved there is a reasonable probability that but for counsel's errors, he would not have pled guilty, which requires proof that a decision to reject the plea bargain was rational under the circumstances. *See Ex parte Harrington*, 310 S.W.3d at 458; *Padilla*, 130 S. Ct. at 1485. This inquiry is made on a case-by-case basis, considering the circumstances surrounding the plea and the gravity of the alleged failure. *See Ex parte Moreno*, No. 02-11-00272-CR, — S.W.3d —, 2012 WL 3734003, at *4, *7 (Tex. App.—Fort Worth Aug. 30, 2012, no pet. h.); *see also Aguilar*, 375 S.W.3d at 525–26.

Initially, we note that the habeas court was free to disbelieve appellant's self-serving testimony that he would not have pled guilty if he had been aware of the immigration consequences of his plea. *See Ex parte Moreno*, 2012 WL 3734003, at *5; *Ex parte Ali*, 368 S.W.3d 827, 840–41 (Tex. App.—Austin 2012, pet. ref'd); *see also Ex parte Tovilla*, No. 14-11-01120-CR, 2012 WL 113049, at *3 (Tex. App.—Houston [14th Dist.] Jan. 12, 2012, pet. ref'd) (mem. op., not designated for publication). We defer to the habeas court's findings based on credibility. *See Ex parte Tovilla*, 2012 WL 113049, at *3; *see also In re M.P.A.*, 364 S.W.3d 277, 284 (Tex. 2012); *Ex parte Thompson*, 153

S.W.3d 416, 417–18 (Tex. Crim. App. 2005).[3] Further, it is irrelevant that appellant actually became the subject of deportation proceedings as a result of his plea. *See Aguilar*, 375 S.W.3d at 526 n.8 (ongoing deportation proceedings not necessary to assert *Padilla* claim); *cf. Strickland*, 466 U.S. at 690 (adequacy of representation should not be evaluated with "the distorting effects of hindsight").

The habeas court considered the "overwhelming" evidence of appellant's guilt, the fact that he faced up to six months' confinement and a $2,000 fine if convicted, the lack of evidence of any factual or legal defenses, and the lack of evidence that any other plea deal would have helped him avoid deportation. These factors suggest that a rational noncitizen defendant would likely not risk a trial if the result is near-certain conviction— under those circumstances, the defendant faces a harsher criminal penalty in addition to the same immigration consequences of pleading guilty. *See Ex parte Ali*, 368 S.W.3d at 840 (overwhelming evidence of guilt meant that the applicant's conviction was "virtually certain," and by rejecting the plea deal, the applicant "would have risked the same deportation consequences and, in addition, could have been sentenced to up to one full year of actual jail time"); *see also Ex parte Moreno*, 2012 WL 3734003, at *6 (finding no prejudice when there was no evidence that the State would have considered or accepted a plea bargain for a charge not resulting in the same immigration consequences).[4]

---

[3] *But see Ex parte Romero*, 351 S.W.3d 127, 131 (Tex. App.—San Antonio Aug. 3, 2011, no pet.) (habeas court abused its discretion denying the writ because the appellant stated in his affidavit that he would not have pled guilty).

[4] We note that the inquiry is not whether appellant would have received a more favorable disposition if he had gone to trial. *See Johnson*, 169 S.W.3d at 231. But to determine whether it would be rational for a defendant to insist on going to trial, a habeas court properly considers evidence concerning the likelihood of success at trial—if there is overwhelming evidence of guilt and no evidence of a legal or factual defense to the crime, then it likely would be irrational to go to trial. *See Ex parte Ali*, 368 S.W.3d at 840 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("In many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. . . . [For example], where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.")).

The habeas court specifically found Officer Torres's affidavit credible and highlighted some of the "overwhelming" evidence of appellant's guilt: he smelled of marijuana, had flakes of marijuana on his shirt, and confessed to having marijuana in the car he was driving.[5] During the habeas hearing, appellant also admitted that he "did illegally possess marijuana in this underlying marijuana case." On redirect, appellant said he did not know the legal definition of possession and did not know if the search was lawful, but appellant presented no affirmative evidence that he had any factual or legal defenses to the charge. Accordingly, the habeas court's findings are supported by the evidence.

Further, although the *Padilla* Court recognized that deportation consequences are "sometimes the most important part" of the penalty that may be imposed on noncitizens who plead guilty, 130 S. Ct. at 1481, this record contains no evidence indicating that immigration consequences were appellant's paramount concern. The habeas court found that Henderson informed appellant that the guilty plea "may result in deportation," consistent with the admonition required by Article 26.13 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13 (West 2009). Appellant signed plea paperwork containing the admonition, and the habeas court relied on its personal recollection to find that the judge taking appellant's plea "would not have taken any plea where the defendant . . . expressed any doubts as to the consequences of his entering a plea of guilty." The habeas court also found that appellant "made no showing that he ever questioned his attorney at the time of the plea regarding any such factors that might limit his deportation consequences." Thus, there is no evidence appellant expressed his concerns about deportation to the trial court, plea counsel, or anyone else at the time of his plea. The habeas court could have rationally believed that immigration consequences were not appellant's primary concern when pleading guilty "based upon appellant's apparent total inaction upon receiving repeated verbal and written warnings about the

---

[5] Torres also stated in his affidavit that appellant's eyes were "red and glassy."

possibility of his deportation." *Ex parte Moreno*, 2012 WL 3734003, at *5.[6]

Appellant cites the case of *Ex parte Elizondo-Vasquez*, 361 S.W.3d 120 (Tex. App.—Texarkana 2011, no pet.). That case presented different circumstances: the court of appeals found prejudice when the defendant "specifically inquired of trial counsel about [his immigration status] and the effect his plea would have upon it, as well as potential outcomes." *Id.* at 123. Thus, the Texarkana Court considered evidence that immigration consequences were a paramount concern. Similarly, we reject the reasoning employed by the San Antonio Court of Appeals in *Ex parte Romero*, where the court reversed the habeas court's denial of the writ almost entirely based on the self-serving affidavit of the applicant. *See* 351 S.W.3d 127, 131 (Tex. App.—San Antonio 2011, no pet.). As the Austin Court of Appeals noted, the *Ex parte Romero* decision "appears to have disregarded implied factual findings by the trial court that the applicant's testimony or affidavit was not credible[;] the case[ is] contrary to well-established precedent holding that reviewing courts are to defer to the trial court's factual findings and credibility determinations." *Ex parte Ali*, 368 S.W.3d at 841 n.11.

Appellant suggests that a "probation-eligible defendant charged with a minute amount of marijuana would never voluntarily forfeit his entire family and existence in the United States to avoid the *unlikely* maximum six-month jail sentence on a Class B misdemeanor." He suggests his situation is "no different" from the decision in *Salazar v. State*, 361 S.W.3d 99 (Tex. App.—Eastland 2011, no pet.). In *Salazar*, the court of appeals reversed the habeas court's denial of the writ and held that Salazar could have rationally rejected the plea deal of two years deferred adjudication with a $500 fine and $1,800 in restitution for theft of property—a state jail felony that carried a maximum

---

[6] We do not hold that reciting the statutory admonishment "cures" prejudice as a matter of law. *See Ex parte Tanklevskaya*, 361 S.W.3d 86, 99 (Tex. App.—Houston [1st Dist.] May 26, 2011, pet. filed) ("[U]nder these facts, the trial court's statutory admonishment prior to accepting applicant's guilty plea does not cure the prejudice arising from plea counsel's failure to inform applicant that, upon pleading guilty, she would be presumptively inadmissible."). But a defendant's failure to express concerns about immigration consequences after receiving repeated warnings may be a factor to consider. *See Ex parte Moreno*, 2012 WL 3734003, at *5.

penalty of two years' confinement and a $10,000 fine. *Id.* at 101, 103.  Notably, Salazar would have risked a penalty greater than appellant had he gone to trial.  Further, like appellant here, Salazar was eighteen years old at the time of his plea and had lived as a lawful permanent resident in the United States for less than five years. *Id.* at 102–03.  He had been reared in the United States, and his family was in the United States. *Id.* at 103.

However, unlike appellant, Salazar had no criminal record, and there was evidence that he had a great deal of community support that would help him seek probation if convicted at trial. *Id.*[7]  The court also noted that Salazar had a factual defense to the crime: "He believes he is not guilty because he thought the taking of the [property] was a prank and that his friend intended to return it." *Id.*  Unlike Salazar, appellant admitted that he "did illegally possess marijuana in this underlying marijuana case," and he presented no evidence that he had a legal or factual defense to the crime.  Further, the habeas court specifically found Officer Torres's account of the offense credible.

Giving appropriate deference to the habeas court's factual findings, we agree that appellant failed to prove that it would have been rational for him to reject the plea deal and insist on going to trial.  Accordingly, appellant's sole issue on appeal is overruled.

## CONCLUSION

Having overruled appellant's sole issue on appeal, we affirm the habeas court's order denying the writ.

/s/          Sharon McCally
             Justice


Panel consists of Justices Boyce, McCally, and Mirabal.[8]

Publish — TEX. R. APP. P. 47.2(b).

---

[7] On appeal, appellant claims that he would have been eligible for probation if convicted at trial, but he did not develop the record in the habeas court concerning the ***likelihood*** of obtaining probation after a trial.

[8] Senior Justice Margaret Garner Mirabal sitting by assignment.