In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00177-CR
_____

EX PARTE AVERY JACOB POLLOCK

**On Appeal from the County Court at Law No. 2**
**Montgomery County, Texas**
**Trial Cause No. 14-27980**

## MEMORANDUM OPINION

Avery Jacob Pollock appeals an order denying his post-conviction application for writ of habeas corpus on the ground that he received ineffective assistance of counsel during the guilt-innocence stage of trial and at the post-conviction stage. We affirm.

## I. Background

Pollock and Krista Waid have a history of domestic violence cases against each other. On August 8, 2013, Pollock was arrested for assaulting Waid. The arrest record indicates that Pollock told the police officer that he and Waid had gotten into an argument and Waid would not let him go, so he pushed Waid off of

him. Waid reported that she woke Pollock and as a result, he became angry and started cursing and yelling at her. She claimed he continuously threw her to the floor and squeezed her face "'as hard as he could.'" Pollock was arrested and charged.

Pollock pled guilty to the misdemeanor offense of assault, family violence. *See* Tex. Penal Code Ann. § 22.01 (West Supp. 2013). The trial court found Pollock guilty and assessed punishment at thirty days of confinement. The judgment indicates that the trial court admonished Pollock of the consequences of his plea, found Pollock mentally competent, and found Pollock freely and voluntarily entered the plea.

Pollock filed a motion for new trial, wherein he argued that he did not understand his options or the ramifications of his guilty plea and thus, his plea was involuntary. The trial court conducted a hearing on Pollock's motion for new trial, but continued the hearing without having issued a ruling. By the time the court reconvened the hearing on Pollock's motion for new trial, seventy-five days had passed since the imposition of Pollock's sentence, and the trial court no longer had jurisdiction to rule on the motion. Thus, Pollock's motion for new trial was overruled by operation of law. *See* Tex. R. App. P. 21.8(a), (c) (stating that a motion for new trial that is not timely ruled upon is denied by operation of law

2

seventy-five days after the original sentence is imposed or suspended in open court).[1]

On March 5, 2014, Pollock filed an application for writ of habeas corpus alleging he was denied effective assistance of counsel during the plea process and during the post-conviction stage. After a hearing, the trial court denied Pollock habeas relief. Pollock appeals from the denial of habeas relief.[2]

## II. Standard of Review

We review a court's determination on an application for writ of habeas corpus for abuse of discretion. *Ex parte Klem*, 269 S.W.3d 711, 718 (Tex. App.—Beaumont 2008, pet. ref'd). In reviewing the trial court's decision, we review the facts in the light most favorable to the court's ruling and afford almost total deference to the court's determination of historical facts supported by the record, especially when the court's findings of fact are based on an evaluation of credibility and demeanor. *Id*. We apply this deferential standard of review

---

[1] Pollock filed a direct appeal of his conviction on November 14, 2013. However, the trial court certified that his case was a plea-bargain case and that the defendant had no right of appeal. *See* Tex. R. App. P. 25.2(a)(2). Accordingly, we dismissed Pollock's direct appeal. *See Pollock v. State*, No. 09-13-00512-CR, 2013 WL 6557558 (Tex. App.—Beaumont Dec. 11, 2013, no pet.) (mem. op., not designated for publication).

[2] Pollock has discharged his sentence, but he has sufficiently alleged that he is suffering from, or could suffer from, collateral consequences as a result of this conviction. *See Ex parte Harrington*, 310 S.W.3d 452 (Tex. Crim. App. 2010).

3

regardless of whether the trial court's findings are explicit or implied, or based on affidavits or live testimony. *Ex parte Fassi*, 388 S.W.3d 881, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.). When the resolution of the raised issue turns on an application of legal standards, we review the trial court's determination de novo. *Id*. The habeas applicant bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Id*.

### III. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, an appellant must show by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) counsel's deficiency caused the appellant prejudice—counsel's errors were so serious as to deprive appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Garza v. State*, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The appellant must demonstrate a reasonable probability that, but for his counsel's errors, the outcome would have been different. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. Our review of defense counsel's representation is "highly deferential and

presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone*, 77 S.W.3d at 833.

### 1. Alleged Failure to Adequately Investigate

In his first issue, Pollock contends he was denied effective assistance of counsel during the plea process because his counsel "failed to investigate the facts of the case." Specifically, Pollock claims his counsel failed to learn that Waid had pending assault-family-violence cases for assaulting Pollock. Pollock contends that this evidence supported his only viable defense—that he acted in self-defense. Pollock contends if his counsel had properly investigated the case and learned of the pending cases against the complainant, there is a reasonable probability that the result of his proceeding would have been different—that is, he would not have entered a plea of guilty.

"An attorney advises a client based upon an evaluation of numerous factors and considerations." *Ex parte Niswanger*, 335 S.W.3d 611, 616 (Tex. Crim. App. 2011). "[C]ompetent advice requires that an attorney conduct independent legal and factual investigations sufficient to enable him to have a firm command of the case and the relationship between the facts and each element of the offense." *Id*. at 615. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*,

5

466 U.S. at 691. A decision not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* We will not reverse a conviction unless the consequence of the failure to investigate is that the only viable defense available to the accused is not advanced and there is a reasonable probability that but for counsel's failure to advance the defense, the result of the proceeding would have been different. *McFarland v. State*, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996), *overruled on other grounds by Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998).

As exhibits to his application for writ of habeas corpus, Pollock attached the affidavit of his trial counsel and the transcript from the motion for new trial hearing. Pollock's trial counsel was appointed to represent Pollock for this offense. After appointed, trial counsel obtained and reviewed the State's file. According to trial counsel's affidavit, the file contained the offense report, but there was nothing in the file or written on the file indicating that Waid had a pending assault-family violence case where she had assaulted Pollock. According to Pollock's trial counsel, the prosecutor did not tell her that Waid had an open case for an assault against Pollock or that she had had a subsequent arrest for assaulting Pollock. Trial counsel reviewed the State's file with Pollock and allowed him to read the offense report. Pollock's trial counsel understood from the file that an independent witness

6

had observed Pollock drag eight-to-nine-month-pregnant Waid out of their home by her hair. Pollock's trial counsel was concerned since the assault had an independent witness.

According to Pollock's trial counsel, she attempted to discuss with Pollock the events that led to his arrest, but he would only discuss with her "the fact that he wanted to enter a plea of guilty and get out of jail." Trial counsel explained to Pollock that she had reservations with him pleading guilty. Trial counsel further explained to Pollock that "an assault family violence conviction was very serious, and, that due to his age, it would follow him the rest of his life." She explained, "it would be difficult for him to get a job and that he could never own a gun." After making her concerns known to Pollock, Pollock told his trial counsel that he did not care; he just wanted to plead guilty and get out of jail. Pollock's trial counsel discussed with him the possibility of making a bond, but Pollock responded that "he did not want to make a bond that he wanted to enter a plea of guilty and get out of jail." Pollock's trial counsel asked him to allow her to reset his case so that she could investigate it, but Pollock did not want to reset his case, he only wanted his trial counsel to obtain a plea offer for him to get out of jail.

Thereafter, Pollock's trial counsel negotiated a plea agreement with the prosecutor as Pollock had instructed her to do. The prosecutor offered Pollock

7

thirty days in jail, but Pollock's trial counsel requested Pollock receive less time or that the State allow Pollock to plead guilty to an offense that did not have an affirmative finding of family violence. The State refused both of trial counsel's requests. Pollock's trial counsel again met with him and advised him that he should allow her to reset his case, but Pollock declined to follow counsel's advice and decided to accept the State's thirty-day offer. According to Pollock's trial counsel, he demonstrated a "very poor attitude" toward her during the plea negotiations.

According to Pollock's trial counsel, she reviewed all the plea paperwork with Pollock. She read the documents to him and asked him if he had any questions, to which he indicated he did not. His trial counsel spent extra time working with Pollock because he was so young. She told Pollock that he and Waid needed to get away from one another and that if there was a second assault allegation, Pollock would be arrested for a felony offense. According to trial counsel, Pollock went before the judge and indicated to the judge that he wanted to plead guilty, that he had reviewed the plea paperwork with his attorney, and that he understood there was an affirmative finding of family violence.

Pollock testified during the hearing conducted on his motion for new trial. According to Pollock, he attempted to tell his trial counsel his side of what had transpired with Waid, but his trial counsel would not listen to him and just "tried to

8

move [him] along as fast as possible." Pollock told his trial counsel that he was innocent, and, at least according to Pollock, his trial counsel told him that his innocence did not matter. Pollock approached the subject of a bond with his trial counsel, but she told him there was no chance he would get a bond and that he could not call his father to make the bond. According to Pollock, his trial counsel told him if he waited for trial, it would be months before he would get out of jail.

Pollock admitted that he signed the plea paperwork. Pollock does not argue that he did not read the plea paperwork, but that things happened too fast and he just wanted to be with his son. Pollock contends that his trial counsel did not review the plea paperwork with him and so he did not understand what he was signing. Pollock recalls his trial counsel told him to plead guilty. He believes he did not have a choice as to how he pled and his plea was involuntary. He contends that his trial counsel did not explain to him the ramifications of an assault, family violence plea. He also contends that she did not go over the paragraph in the plea papers that reflected a finding of family violence against a member of his household. Pollock recalls that during his plea hearing, he answered "yes" when the trial judge asked him if he was pleading "guilty" freely and voluntarily. He admits that he pled guilty knowing the State's allegations against him. He admits that no one threatened him to entice him to enter a plea of guilty.

In determining the reasonableness of trial counsel's actions, we must consider Pollock's statements and actions in determining the trial strategy his counsel pursued. *See Duncan v. State*, 717 S.W.2d 345, 348 (Tex. Crim. App. 1986). In *Strickland*, the United States Supreme Court explained: "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." 466 U.S. at 691. Therefore, a defendant may not claim ineffective assistance of counsel when the defendant preempts his counsel's strategy by insisting that a different defense be followed. *Duncan*, 717 S.W.2d at 348. The defendant has the ultimate authority to make certain fundamental decisions regarding his case, including whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal. *Jones v. Barnes*, 463 U.S.745, 751 (1983).

We further note that the Texas Disciplinary Rules of Professional Conduct provide that an attorney must "abide by a client's decisions: (1) concerning the objectives and general methods of representation; (2) whether to accept an offer of settlement of a matter, except as otherwise authorized by law; (3) [i]n a criminal case, after consultation with the lawyer, as to a plea to be entered, whether to

waive jury trial, and whether the client will testify." Tex. Disciplinary Rules Prof'l Conduct R. 1.02(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9). Rule 1.02 does not require an attorney to abide by a client's decision that would be criminal or fraudulent. Tex. Disciplinary Rules Prof'l Conduct R. 1.02(c).

Because we review the record in the light most favorable to the court's ruling, we conclude that the trial court resolved the conflicts in the evidence against Pollock, and we defer to the court's resolution of the conflicts. The record clearly reflects that Pollock chose to plead guilty, despite repeated advice from his counsel that doing so was not advisable. Pollock's trial counsel specifically asked him to allow her to reset his case so that she could further investigate the facts. Pollock's trial counsel fully advised him and attempted to dissuade him from pleading guilty, but he was intent on doing so. There is evidence in the record to support that after trial counsel received the plea agreement from the State that Pollock requested, she reviewed the plea agreement with Pollock, and Pollock knowingly and voluntarily pled guilty to the State's charges.

There is no evidence or argument in this habeas appeal that Pollock's demand of his counsel to obtain a plea agreement for him constituted a criminal, fraudulent, or otherwise prohibited act. Pollock acknowledged his counsel's advice

11

to obtain a reset so that she could further investigate his case, but he decided to risk pleading guilty without the information that his counsel could have obtained if she had the additional time she told him she needed. Pollock not only had the authority to decide to plead guilty, but also had the authority to determine that the objective of his counsel's representation was to obtain a plea to get him out of jail.

Accordingly, after viewing the facts in the light most favorable to the trial court's ruling, we conclude Pollock failed to establish his counsel was ineffective by not investigating his case. Rather, counsel attempted to follow the trial strategy thrust upon her by Pollock's insistence on pleading guilty. Because Pollock has failed to establish the first prong of the *Strickland* test, we overrule Pollock's first issue.

**2.    Alleged Ineffectiveness in Failing to Timely Set a Motion for New Trial Hearing**

In his second issue, Pollock argues that he received ineffective assistance during his postjudgment stage. Specifically, Pollock argues his postjudgment counsel was ineffective when he allowed the hearing for his motion for new trial to be delayed beyond the seventy-five day period that the trial court retained jurisdiction of the case.

Without determining if Pollock's postjudgment counsel was deficient in failing to timely set the continuance of the hearing on the motion for new trial, we

12

hold that Pollock has failed to show that his counsel's failures caused him to suffer such prejudice that the outcome would have been different but for his counsel's alleged errors. *See Strickland*, 466 U.S. at 694; *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (holding that although motion to suppress would have been appropriate vehicle to challenge alleged illegal search, appellant failed to prove such motion would have been granted, thereby failing to satisfy *Strickland*); *Redmond v. State*, 30 S.W.3d 692, 699 (Tex. App.—Beaumont 2000, pet. ref'd) ("Assuming counsel's performance was deficient, Redmond failed to establish prejudice by demonstrating that the motion for new trial would have been granted had the trial court conducted the evidentiary hearing.").

Pollock argues that there is reasonable probability that had his post-judgment counsel not erred in the scheduling of his motion for new trial hearing, the trial court would have granted his motion for new trial because he received ineffective assistance of counsel from his trial attorney. However, in our resolution of Pollock's first issue we determined Pollock's trial counsel did not render ineffective assistance of counsel. Pollock has not established a reasonable probability that if his postjudgment counsel had timely obtained the hearing on Pollock's motion, the result of the trial court's proceeding would have been different. Thus, Pollock has failed to satisfy the second prong under the *Strickland*

test to demonstrate prejudice, which defeats his ineffectiveness claim. *Strickland*, 466 U.S. at 700. Pollock's second issue is overruled.

Having overruled Pollock's issues, we affirm the trial court's order denying Pollock the relief sought by his application for writ of habeas corpus.

AFFIRMED.

_____

CHARLES KREGER
Justice

Submitted on July 31, 2014
Opinion Delivered August 20, 2014
Do not publish

Before McKeithen, C.J., Kreger, and Horton, JJ.