

**In the**
**Court of Appeals**
**Second Appellate District of Texas**
**at Fort Worth**

_____

No. 02-19-00215-CR

_____

EX PARTE OSCAR ACUNA

On Appeal from the 158th District Court
Denton County, Texas
Trial Court No. F16-2622-158

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Oscar Acuna appeals the denial of relief on his habeas application. According to Acuna, he was never informed of the immigration consequences of his guilty plea as required by *Padilla v. Kentucky*, and the trial court erred in concluding otherwise in reliance on his trial counsel's "conclusory testimony." 559 U.S. 356, 369, 130 S. Ct. 1473, 1483 (2010). We will affirm.

## I.    Background

In accordance with a plea bargain, Acuna pleaded guilty to felony possession of a controlled substance in exchange for three years' deferred adjudication. Ten months later, he filed an application for habeas relief, contending that his attorney was ineffective in that he never informed Acuna that deportation was a nearly unavoidable consequence of his guilty plea.

In an affidavit accompanying the application, Acuna averred that he was born in El Salvador and came to the United States when he was four years old. According to Acuna, he attended public school and then community college in the United States, spoke English as his first language, and had no memories of the country he left behind at age four.

Acuna explained that he had temporary protected status[1] until the events that unfolded after his arrests for possession of a controlled substance and theft on July 4,

---

[1] *See* 8 U.S.C.A. § 1254a(a).

2016, and February 7, 2017. Acuna said that his family hired an attorney named Roberto Alonzo to "fight" the resulting cases. However, Acuna testified that Alonzo was not interested in his claim of innocence as to the theft charge; Alonzo reportedly told Acuna to "be quiet and let him do his work." According to Acuna, Alonzo told him that if he did not plead guilty, he would probably go to jail and then be deported, but if he pleaded guilty, he would not get any jail time and would not be deported. Acuna averred that based on this advice—as well as his fear of being deported to El Salvador, which he viewed as a violent and dangerous place—he pleaded guilty. However, after his plea, "ICE" informed Acuna that he had pleaded guilty to a deportable offense. He would never have pleaded guilty, he attested, if Alonzo had told him the truth. Along with his own affidavit, Acuna submitted multiple affidavits from friends and family members, who agreed with Acuna's account and attested to his good character. Acuna argued that Alonzo's alleged failure to inform him of the near-certain prospect of deportation amounted to ineffective assistance of counsel under *Padilla*. *Id.*, 130 S. Ct. at 1483.

The State soon filed a response to the application in which it elaborated on the history of Acuna's cases, including the charges for felony drug possession, misdemeanor drug possession, and misdemeanor theft.[2] The State alleged that after he

_____

[2]More specifically, the State alleged that on July 4, 2016, officers stopped Acuna for going seventy miles per hour in a fifty-mile-per-hour zone. According to the State's habeas response and an arresting officer's report, the officers soon found that Acuna did not have a valid driver's license and that he had a previous conviction for driving

was charged, Acuna applied for and was approved to enter a first-time offender drug diversion program. The State explained that if he had successfully completed the diversion program, his cases would have been dismissed and eligible for expunction. But Acuna tested positive for marijuana and was removed from the program. Thereafter, he pleaded guilty to the felony possession and misdemeanor theft charges in exchange for deferred adjudication and pleas in bar as to both misdemeanor possession offenses. Attached to the State's response were records from Acuna's cases,

---

without a license. The arresting officers noticed the odor of marijuana and observed marijuana stems on the center console, and Acuna admitted that he had a bong in the vehicle. Upon searching the vehicle, officers found an 18-inch glass bong, three smaller bongs, a small scale, three cannisters of butane or propane, 1.9 ounces of marijuana, a wad of tar-like substance that was later revealed to be 23 grams of tetrahydrocannabinol (THC), and a metal device used to consume THC dabs. Acuna had $2,381 in cash in his wallet.

On October 17, 2016, Acuna was indicted for felony possession with regard to the THC, and on December 16, 2016, he was charged with misdemeanor possession with regard to the marijuana.

On February 7, 2017, Acuna again crossed paths with law enforcement when police received a 911 call reporting Acuna as a suspicious person attempting to enter a stranger's home. Officers smelled marijuana on him, and Acuna admitted to recently smoking marijuana. Police searched his backpack and found two glass pipes with marijuana residue in them, 1.495 ounces of marijuana, a digital scale with marijuana residue, a bottle with purple liquid in it, and a laptop. The laptop had been reported stolen. Acuna had $512 in his wallet.

Acuna was charged with misdemeanor possession of marijuana and theft in connection with his February 7 arrest.

The trial court incorporated much of this information in its findings of fact, and Acuna has not challenged the veracity of those findings.

including the indictment, an application for the diversion program, emails indicating his removal from that program, and the order of deferred adjudication.

Also attached to the State's response was an affidavit from Alonzo. In it, Alonzo averred,

- he had practiced criminal law in Texas for thirty-two years;

- he did not recall the specifics of Acuna's case;

- his usual practice is to discuss with clients the defenses that can be raised, whether a trial by jury or before the court would be advisable, the options for any plea offer, and the advantages and disadvantages of accepting a plea bargain;

- any discussion he had with Acuna would have included the advantages of deferred adjudication "in addition to the deportation consequences";

- he worked to get Acuna into the diversion program because "any other punishment would result in deportation," and he told Acuna that he had to be in the program "to keep from being deported";

- any agreement to a plea bargain would have been Acuna's decision alone after they had discussed the benefits and deportation consequences of the agreement; and

- although he could not recall whether Acuna would likely have been convicted had he gone to trial, there would have been at least a possibility

5

of conviction in this case or else he would have strongly advised Acuna to take the case to trial.

The State also attached an affidavit from Alonzo's co-counsel, Luis Merren. Like Alonzo, Merren testified that he informed Acuna of the available defenses, the advantages of deferred adjudication, and the prospects of success if he opted for trial. Merren also testified that his custom and practice was to tell the client "the immigration consequences he faces if he pleads guilty either to regular probation or deferred adjudication." According to Merren, Acuna's true concern was "to avoid the possibility of going to prison," and Acuna's preference was "to opt for a supervised period of probation and avoid trial knowing fully his immigration consequences."

After reviewing both sides' affidavits, the habeas court denied the application without a hearing. The order incorporated findings and conclusions, in which the court found that Alonzo and Merren were credible but that Acuna was not. The court also found that Alonzo discussed the immigration consequences of the plea with Acuna, telling him that the only way to avoid deportation was successfully completing the diversion program. The findings further stated that Merren informed Acuna of the immigration consequences of his plea, the available defenses, and the chances of success at trial. Finally, the habeas court found that Acuna's "biggest concern was avoiding prison." Based on these findings, the court concluded that Acuna had not satisfied his initial burden to show that Alonzo and Merren rendered deficient performance, and that even if Acuna had satisfied this burden, he had not shown prejudice.

6

Acuna appeals the denial of his application.

## II.    Discussion

In his sole issue, Acuna contends that he satisfied his burden to demonstrate ineffective assistance of counsel and that the habeas court erred in relying on his trial counsel's "conclusory testimony" to conclude otherwise.

When reviewing the habeas court's ruling on an application, we view the facts in the light most favorable to the habeas court's ruling and will uphold it absent an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In a habeas case such as this one, "the trial judge is the sole finder of fact." *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). We afford almost total deference to a habeas court's factual findings when they are supported by the record, especially when those findings are based upon credibility and demeanor. *Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016). This deferential review applies even when the findings are based on affidavits rather than live testimony. *Ex parte Moreno*, 382 S.W.3d 523, 526 (Tex. App.—Fort Worth 2012, pet. ref'd); *Ex parte Mello*, 355 S.W.3d 827, 832 (Tex. App.—Fort Worth 2011, pet. ref'd) (op. on reh'g). We review de novo mixed questions of law and fact that do not depend upon credibility and demeanor. *Mello*, 355 S.W.3d at 832.

An applicant for a postconviction writ of habeas corpus bears the burden of proving his claim by a preponderance of the evidence. *Torres*, 483 S.W.3d at 43. To demonstrate that he is entitled to postconviction relief on the basis of ineffective

assistance of counsel, an applicant must demonstrate that (1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) the applicant was prejudiced as a result of counsel's errors, in that, but for those errors, there is a reasonable probability of a different outcome. *Id.*; *see Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984). Counsel's performance should be judged by whether it is reasonable under prevailing professional norms. *Ex parte Chavez*, 560 S.W.3d 191, 203–04 (Tex. Crim. App. 2018).

Under the first prong of *Strickland*, "[t]he weight of prevailing professional norms supports the view that counsel must advise [his] client regarding the risk of deportation" when the client is a noncitizen. *Padilla*, 559 U.S. at 367, 130 S. Ct. at 1482. If immigration law regarding deportation is not succinct and straightforward, defense attorneys must merely advise their clients that they could be deported. *Ex parte Garcia*, 547 S.W.3d 228, 229 (Tex. Crim. App. 2018) (quoting *Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483). But when the law is "truly clear" that the defendant would be deported if convicted, defense attorneys have a duty to give correct advice that is equally clear. *Id.*

Acuna contends that the immigration consequences of his guilty plea were clear, and because counsel never gave commensurately clear advice warning him of deportation, counsel was ineffective under the first prong of *Strickland*. As we understand his argument, Acuna says the lack of clear advice is evident in counsel's affidavits. Acuna contends that these affidavits were faulty because they never specified the exact ramifications of his plea and instead spoke only vaguely of "immigration

8

consequences." Acuna argues that the habeas court therefore erred in relying on counsel's "conclusory testimony," which offered "no evidence" of the specific advice that he received—especially, what advice he received regarding his options after he was removed from the diversion program. According to Acuna, the habeas court should have instead adopted his version of events as fact.

There are multiple problems with Acuna's argument. First, when Acuna asserts that the State offered no evidence to explain what advice he received, he appears to suggest that it should be the State's burden to offer evidence demonstrating that he received the correct advice. But it was not the State's burden to construct a perfect account of the advice that trial counsel rendered or to show that it was satisfactory. *See Torres*, 483 S.W.3d at 43. Rather, it was Acuna's burden to prove by a preponderance that he did not receive the required advice—or that he received misadvice that was just as "bad." *See Garcia*, 547 S.W.3d at 230. The habeas court expressly found that Acuna's affidavit was not credible. This left little in the record to satisfy his burden—and thus, little need to consider the State's contrary evidence at all. *See Ex parte Roldan*, 418 S.W.3d 143, 147–48 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (deferring, in habeas proceeding stemming from drug possession case, to habeas court's finding that applicant was not credible and concluding that applicant had failed to establish his burden under *Padilla*).

Second, even if we consider the State's evidence, Acuna misrepresents that evidence when he describes it as conclusory. As their affidavits specifically state,

9

counsel made clear to Acuna that many of his possible courses of action carried not just the possibility of some indefinite "immigration consequences" but the certainty of "deportation." Alonzo testified, "I told Acuna in order to keep from being deported he had to be in the DIVERT program," an apparent reference to the diversion program. At another point in his affidavit, Alonzo stated, "I worked to get him into the DIVERT program" because "any other punishment would result in deportation." Counsel explained that they also informed Acuna of his other options—which came into play when Acuna was removed from the diversion program—and their attendant likelihood of deportation. Alonzo averred that he discussed with Acuna "the deportation consequences of" entering a "plea bargain agreement." Later in his affidavit, Alonzo again testified that he would have discussed "the deportation consequences" of deferred adjudication with Acuna. Merren testified that Acuna opted for a plea agreement and deferred adjudication "knowing fully" of the consequences because his paramount concern was "to avoid the possibility of going to prison." Thus, counsel's affidavits were far more concrete in their terms than Acuna represents.

Third, by questioning these affidavits, Acuna raises a broader question of credibility. Acuna effectively contends that (1) the habeas court should have believed his testimony, and (2) the habeas court erred when it instead believed Alonzo's and Merren's testimony. But in this type of habeas case, "[v]irtually every fact finding involves a credibility determination," and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Duque*, 540 S.W.3d 136, 145 (Tex. App.—

10

Houston [1st Dist.] 2017, no pet.) (quoting *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996)). In its reckoning of credibility, "the habeas court was free to disbelieve appellant's self-serving testimony." *Ex parte Fassi*, 388 S.W.3d 881, 888 (Tex. App.—Houston [14th Dist.] 2012, no pet.). And because counsel's affidavits support the habeas court's findings, we are in no position to disturb the court's credibility determination that Acuna received the correct advice. *See id.* (concluding, in habeas proceeding stemming from marijuana possession case, that credibility determination supported denial of applicant's *Padilla* claim).

For these reasons, Acuna failed to prove the first *Strickland* prong. Accordingly, the habeas court did not abuse its discretion by denying Acuna's application. *See Kniatt*, 206 S.W.3d at 664. We overrule Acuna's sole issue and affirm the order denying habeas relief.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: September 26, 2019