PD-1259-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/28/2015 5:51:35 PM
Accepted 11/2/2015 11:25:44 AM
ABEL ACOSTA
CLERK

**NO. PD-1259-15**

_____

**IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS**

_____

**EX PARTE CHIDIEBELE GABRIEL OKONKWO**

_____

**ON DISCRETIONARY REVIEW FROM THE
COURT OF APPEALS FOR THE
FOURTEENTH JUDICIAL DISTRICT OF TEXAS
AT HOUSTON
CAUSE NO. 14-14-00835-CR**

_____

**Appealed from the 434th District Court
of Fort Bend County, Texas
Cause No. 09-DCR-052539**

_____

**PETITION FOR DISCRETIONARY REVIEW**

_____

FILED IN
COURT OF CRIMINAL APPEALS

November 2, 2015

ABEL ACOSTA, CLERK

**Josh Schaffer
State Bar No. 24037439**

**1021 Main St., Suite 1440
Houston, Texas 77002
(713) 951-9555
(713) 951-9854 (facsimile)
josh@joshschafferlaw.com**

**Attorney for Appellant
CHIDIEBELE GABRIEL OKONKWO**

**ORAL ARGUMENT NOT REQUESTED**

## IDENTITY OF THE PARTIES

Appellant:       Chidiebele Gabriel Okonkwo
            3323 Thistlegrove Lane
            Sugar Land, Texas 77498

Trial Counsel:      Sean Buckley
            770 South Post Oak Lane, Suite 620
            Houston, Texas 77056

Appellate Counsel:    Brian Wice
            440 Louisiana, Ste. 900
            Houston, Texas 77002

Habeas Counsel:     Josh Schaffer
            1021 Main, Ste. 1440
            Houston, Texas 77002

Trial Prosecutor:     Rodolfo Ramirez
            301 Jackson St., Room 101
            Richmond, Texas 77469

Appellate & Habeas Prosecutor: Gail Kikawa McConnell
            301 Jackson St., Room 101
            Richmond, Texas 77469

Trial & Habeas Judge:   James Shoemake
            434th District Court Judge
            301 Jackson St., Room 125
            Richmond, TX  77469

# SUBJECT INDEX

**Page**

STATEMENT OF PROCEDURAL HISTORY ..................................................... 1

STATEMENT REGARDING ORAL ARGUMENT .......................................... 2

GROUNDS FOR REVIEW ................................................................... 2-3

STATEMENT OF THE CASE.................................................................. 3

ARGUMENT.................................................................................... 4

FIRST GROUND FOR REVIEW.............................................................. 4

WHERE THE JURY HAD TO RESOLVE WHETHER
APPELLANT REASONABLY BELIEVED THAT THE
COUNTERFEIT MONEY WAS AUTHENTIC, THE
FOURTEENTH COURT OF APPEALS ERRED IN HOLDING
THAT COUNSEL DID NOT PERFORM DEFICIENTLY WHEN
HE CONCEDED DURING SUMMATION THAT APPELLANT
ACTED "IN A TOTALLY UNREASONABLE WAY THAT
LACKS COMMON SENSE EVEN AT A BASIC LEVEL" (5
R.R. 177).

A.     Statement Of Facts......................................................... 4

B.     Arguments And Authorities ............................................. 5

    1.    The standard of review on an ineffective assistance of
counsel claim......................................................... 5

    2.    Counsel performed deficiently when he conceded during
summation that appellant acted "in a totally unreasonable
way that lacks common sense even at a basic level."........ 6

3.   The Court of Appeals' decision conflicts with applicable decisions of the Supreme Court and another court of appeals, calls for an exercise of the Court's power of supervision, and fails to address the issue raised by appellant's arguments ........................................................   9

SECOND GROUND FOR REVIEW ........................................................   13

THE FOURTEENTH COURT OF APPEALS ERRED IN APPLYING THE WRONG STANDARD OF REVIEW WHEN IT ANALYZED THE PREJUDICIAL EFFECT OF APPELLANT'S REMAINING ALLEGATONS OF DEFICIENT PERFORMANCE INDIVIDUALLY INSTEAD OF CUMULATIVELY, CONTRARY TO STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984), AND EX PARTE AGUILAR, No. AP-75,526, 2007 WL 3208751 (TEX. CRIM. APP. 2007).

A.   Statement Of Facts ........................................................   13

B.   Arguments And Authorities ........................................................   14

CONCLUSION ........................................................   16

CERTIFICATE OF SERVICE ........................................................   17

CERTIFICATE OF COMPLIANCE ........................................................   17

APPENDIX ........................................................   18

# INDEX OF AUTHORITIES

| Cases | Page |
|---|---|
| Brown v. State, 978 S.W.2d 708 (Tex. App.—Amarillo 1998, pet. ref'd) ...... | 12 |
| Craig v. State, 847 S.W.2d 434 (Tex. App.—El Paso 1984, no pet.)............... | 6,8,10 |
| Ex parte Aguilar, No. AP-75,526, 2007 WL 3208751 (Tex. Crim. App. 2007) ................................................................................3,4,6,13,15 | |
| Ex parte Menchaca, 854 S.W.2d 128 (Tex. Crim. App. 1993) ........................ | 14 |
| Ex parte Okonkwo, No. 14-14-00835-CR (Tex. App.—Houston [14th Dist.] 2015)................................................................................... | 2 |
| Gagnon v. Scarpelli, 411 U.S. 778 (1973)........................................................ | 11 |
| Herring v. New York, 422 U.S. 853 (1975) ...................................................... | 10-11 |
| Kimmelman v. Morrison, 477 U.S. 365 (1986)................................................. | 16 |
| Kyles v. Whitley, 514 U.S. 419 (1995) ............................................................. | 6,16 |
| McMann v. Richardson, 397 U.S. 759 (1970) .................................................. | 5 |
| Okonkwo v. State, 357 S.W.3d 815 (Tex. App.—Houston [14th Dist] 2011)..... | 1 |
| Okonkwo v. State, 398 S.W.3d 689 (Tex. Crim. App. 2013)............................. | 1,8,10 |
| Powell v. Alabama, 287 U.S. 45 (1932)............................................................ | 5 |
| Strickland v. Washington, 466 U.S. 668 (1984) ........................................ | 3-6,11,13,15 |
| Wiley v. Sowders, 647 F.2d 642 (6th Cir. 1981)............................................. | 7 |

## Constitutional Provisions

U.S. CONST. amend. VI ............................................................................. 5

U.S. CONST. amend. XIV ........................................................................... 5

## Statutory Provision

TEX. CRIM. PROC. CODE art. 11.072 (West 2014) .............................................. 1

## Rules

TEX. R. APP. P. 47.1 ............................................................................... 12

TEX. R. APP. P. 66.3(a) .......................................................................... 12

TEX. R. APP. P. 66.3(c) ....................................................................... 12,16

TEX. R. APP. P. 66.3(f) .......................................................................... 12

## STATEMENT OF PROCEDURAL HISTORY

Appellant was charged with the third-degree felony offense of forgery in cause number 52,539 in the 434th District Court of Fort Bend County. He pled not guilty before the Honorable James Shoemake. A jury convicted him on July 16, 2010. Pursuant to a plea agreement, the court assessed his punishment at three years in prison, probated for three years, on October 22, 2010. Sean Buckley represented him at trial.

The Fourteenth Court of Appeals reversed appellant's conviction in a published opinion issued on December 20, 2011.[1] The Court of Criminal Appeals reversed that judgment and affirmed the conviction in a published opinion issued on May 15, 2013.[2] Okonkwo v. State, 357 S.W.3d 815 (Tex. App.—Houston [14th Dist] 2011), rev'd, 398 S.W.3d 689 (Tex. Crim. App. 2013). Brian Wice represented him on appeal.

Appellant filed a habeas corpus application pursuant to article 11.072 of the Code of Criminal Procedure on May 23, 2014 (C.R. 173-202). The Honorable James Shoemake entered a *nunc pro tunc* order deleting the fine on June 10 (C.R. 221); conducted a hearing on September 5; and denied habeas corpus relief on September

---

[1] The Court of Appeals held that trial counsel was ineffective in failing to request an instruction in the jury charge on the defense of mistake of fact.

[2] This Court held that counsel was not ineffective because the State already had to prove that appellant knew that the money was forged as an element of the offense.

1

23, 2014 (C.R. 323).[3] Present counsel represented him in the habeas proceeding.

The Fourteenth Court of Appeals affirmed the denial of habeas corpus relief in an unpublished opinion issued on August 27, 2015. Appellant did not move for rehearing. Ex parte Okonkwo, No. 14-14-00835-CR (Tex. App.—Houston [14th Dist.] 2015) (not designated for publication) (Appendix). Present counsel represented him.

This Court previously granted an extension of time to file the petition for discretionary review. It must be filed by October 28, 2015.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not request oral argument because the issues, though important, involve well-settled legal principles and can be resolved on the briefs. However, should the Court want to hear argument, counsel eagerly will present it.

## GROUNDS FOR REVIEW

1. Where the jury had to resolve whether appellant reasonably believed that the counterfeit money was authentic, the Fourteenth Court of Appeals erred in holding that counsel did not perform deficiently when he conceded during summation that appellant acted "in a totally unreasonable way that lacks common sense even at a basic level" (5 R.R. 177).

---

[3] The trial court created confusion when it signed conflicting orders that granted and denied relief and adopted both appellant's and the State's proposed findings of fact and conclusions of law on September 23, 2014 (C.R. 323, 341, 404). The State sought clarification of the ruling (C.R. 343-86). The court asserted on October 9 that it signed the order granting relief inadvertently and intended to sign the State's findings and deny relief (C.R. 404).

2

2. The Fourteenth Court of Appeals erred in applying the wrong standard of review when it analyzed the prejudicial effect of appellant's remaining allegations of deficient performance individually instead of cumulatively, contrary to Strickland v. Washington, 466 U.S. 668 (1984), and Ex parte Aguilar, No. AP-75,526, 2007 WL 3208751 (Tex. Crim. App. 2007).

## STATEMENT OF THE CASE

Appellant attempted to use counterfeit money to obtain a money order from an HEB grocery store. The State alleged that he committed forgery by possessing and presenting counterfeit money, *knowing that it was forged*, with the intent to defraud the store.

Appellant's defense at trial was that he did not know the money was forged and reasonably believed it was authentic. A native of Nigeria, he testified that he received a large amount of cash in the mail from a man in Nigeria who wanted him to purchase a car in the United States and ship it to Nigeria. Appellant tested some of the bills with a counterfeit-detection pen and concluded that they were authentic. The man asked him to obtain money orders to pay some invoices. He purchased money orders using the money at two grocery stores, but HEB rejected the money and called the police. The verdict depended on his credibility.

The Court of Appeals erred in two respects. First, where the jury had to resolve whether appellant reasonably believed that the counterfeit money was authentic, it erroneously concluded that counsel did not perform deficiently when

3

he conceded during summation that appellant acted "in a totally unreasonable way that lacks common sense even at a basic level." Second, it applied the wrong standard of review when it analyzed the prejudicial effect of appellant's remaining allegations of deficient performance individually instead of cumulatively, contrary to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and <u>Ex parte Aguilar</u>, No. AP-75,526, 2007 WL 3208751 (Tex. Crim. App. 2007).

## ARGUMENT

## FIRST GROUND FOR REVIEW

**WHERE THE JURY HAD TO RESOLVE WHETHER APPELLANT REASONABLY BELIEVED THAT THE COUNTERFEIT MONEY WAS AUTHENTIC, THE FOURTEENTH COURT OF APPEALS ERRED IN HOLDING THAT COUNSEL DID NOT PERFORM DEFICIENTLY WHEN HE CONCEDED DURING SUMMATION THAT APPELLANT ACTED "IN A TOTALLY UNREASONABLE WAY THAT LACKS COMMON SENSE EVEN AT A BASIC LEVEL" (5 R.R. 177).**

## A.    Statement Of Facts

The indictment alleged that appellant, with intent to defraud, possessed forged money with intent to pass the money and "with knowledge that the [money] was forged" (C.R. 4). The court instructed the jury in the application paragraph of the charge to convict appellant if it found, beyond a reasonable doubt, *inter alia*, that he acted "with knowledge that the [money] was forged" (C.R. 40). Appellant testified that he did not know the money was counterfeit and believed it was

4

authentic (4 R.R. 205, 212, 215-17, 228, 233; 5 R.R. 11-12, 19, 67, 74, 139-40).

Counsel began his summation by conceding that the State proved beyond a reasonable doubt that appellant acted "in a totally unreasonable way that lacks common sense even at a basic level" (5 R.R. 177).

## B.   Argument And Authorities

### 1.   The standard of review on an ineffective assistance of counsel claim.

Appellant had a right to the effective assistance of counsel at trial.  U.S. CONST. amends. VI and XIV; Powell v. Alabama, 287 U.S. 45, 68-72 (1932). Counsel must act within the range of competence demanded of counsel in criminal cases.  McMann v. Richardson, 397 U.S. 759, 771 (1970).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court addressed the federal constitutional standard to determine whether counsel rendered reasonably effective assistance.  The defendant first must show that counsel's performance was deficient—that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense—that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result.

The defendant must identify specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The

5

reviewing court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance. Ultimately, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Counsel's errors are considered cumulatively to determine whether applicant was prejudiced. Ex parte Aguilar, No. AP-75,526, 2007 WL 3208751, *3 (Tex. Crim. App. 2007) (not designated for publication).

Appellant need not show a reasonable probability that, but for counsel's errors, he would have been acquitted. Rather, the issue is whether he received a fair trial that produced a verdict worthy of confidence. Cf. Kyles v. Whitley, 514 U.S. 419, 434 (1995).

**2. Counsel performed deficiently when he conceded during summation that appellant acted "in a totally unreasonable way that lacks common sense even at a basic level."**

Defense counsel performs deficiently where his summation is affirmatively prejudicial. See Craig v. State, 847 S.W.2d 434, 435-36 (Tex. App.—El Paso 1984, no pet.) (counsel summarized evidence in manner favorable to State, misquoted testimony in manner unfavorable to defendant, and argued that punishment verdict would not deter lifestyle of defendant or his "bandito friends").

6

Counsel cannot concede the defendant's guilt during summation where he pleads not guilty. Wiley v. Sowders, 647 F.2d 642, 649-50 (6th Cir. 1981). It is prejudicial for counsel to concede during summation that the defendant acted unreasonably where that concession relates to the only contested element of the alleged offense and undermines the entire defensive theory.

By the time of summation, counsel thought that the jury believed that appellant was either a criminal or an idiot (C.R. 213; AX 1 at 8). Counsel decided to embrace the notion that he was an idiot and conceded that he acted without reason and common sense. Counsel admits that he did not give adequate thought to the argument before making it; that he should have said that appellant was gullible or naive without conceding that appellant acted unreasonably; and that his concession conflicted with the defensive theory that appellant reasonably believed that the money was authentic because a sampling of bills were tested by a counterfeit-detection pen and several stores previously accepted the bills.

Counsel regrets making this particular argument and, as a result of this case, will never do so in the future (C.R. 213; AX 1 at 8). He admits that it was not a sound strategy to concede that appellant acted unreasonably and without common sense where the defensive theory was that appellant reasonably believed that the money was authentic. He recognized the harm of this argument when this Court observed on discretionary review that he presented inconsistent defensive theories.

7

See Okonkwo, 398 S.W.3d at 696. In a footnote, this Court cited this particular argument as an example of that inconsistency. Id. at n. 7. Counsel admits that he should have argued that appellant lacked the intent to commit forgery because he honestly *and reasonably* believed that the money was authentic (C.R. 213; AX 1 at 8). Counsel performed deficiently in this regard. Craig, 847 S.W.2d at 435-36 (counsel ineffective in making prejudicial argument summarizing evidence in manner favorable to State).

In the habeas proceeding, the trial court adopted the State's proposed conclusion that counsel executed a reasonable strategy to acknowledge appellant's "odd behavior and shortcomings up front, and focus the jury's attention on the critical issue in the case" (C.R. 335, 340; Finding 60; Conclusion 17). This conclusion ignores the allegation because it fails to address counsel's conduct in conceding that appellant acted *unreasonably* and without common sense. Appellant does not complain about counsel's strategic decision to acknowledge appellant's "odd behavior and shortcomings," or to focus the jury on whether appellant knew that the money was counterfeit. The issue is that counsel should have employed this strategy without conceding such an important part of the defense—that appellant *reasonably* believed the money was authentic. The trial court totally ignored counsel's affidavit on this issue.

**3.** **The Court of Appeals' decision conflicts with applicable decisions of the Supreme Court and another court of appeals, calls for an exercise of the Court's power of supervision, and fails to address the issue raised by appellant's arguments.**

The Court of Appeals concluded that the habeas record "supports the trial court's finding that counsel's acknowledgment of appellant's odd behavior up front was a sound trial strategy." Appendix at 8. It asserted that there was evidence suggesting that appellant knew the money was counterfeit; that counsel "sought to gain credibility with the jury by admitting that [this] behavior seemed odd"; and that counsel attempted to "explain away the oddity." Appendix at 8-9. It held that this was a "calculated risk." Appendix at 9.

The Court of Appeals acknowledged that appellant specifically complained about counsel's description of his behavior as "unreasonable" but held that this did not constitute deficient performance. Appendix at 9. It concluded that the jury did not have to determine whether appellant acted reasonably, but only whether he intended to pass counterfeit money. This analysis was dead wrong. The *only* contested issue at trial was whether appellant *reasonably* believed that the money he presented to the store was authentic. Stated otherwise, appellant contended that he did not know that the money was counterfeit. The jury had to resolve whether this belief was reasonable.[4] This Court recognized on discretionary review that the State

_____

[4] Indeed, the State contended on direct appeal that the jury could not have convicted appellant without rejecting his testimony that he believed the money to be authentic.

9

had to prove that appellant knew the money was forged as an element of the offense. Okonkwo, 398 S.W.3d at 691, 695. Counsel destroyed the defense when he conceded during summation that appellant did not act reasonably. His argument was contrary to appellant's not guilty plea, undermined appellant's testimony, and was objectively deficient. The Court of Appeals totally ignored that appellant's "knowledge" was an essential element of the offense, and it neither discussed nor distinguished Craig.

Additionally, the Court of Appeals failed to address appellant's argument that counsel's concession was especially harmful in light of this Court's decision on discretionary review. Specifically, this Court cited the complained-of argument as an example of counsel's failure to present consistent defensive theories. Okonkwo, 398 S.W.3d at 696, n. 7. The Court of Appeals ignored this footnote despite appellant's reliance on it.

The importance of closing argument in a criminal case cannot be underestimated. The Supreme Court has recognized that there can be "no doubt that closing argument for the defense is a basic element of the adversary fact-finding process in a criminal trial." Herring v. New York, 422 U.S. 853, 858 (1975). That Court observed, id. at 862:

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position

10

> to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions. And, for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt.

Defense counsel has a duty to present arguments that support, rather than undermine, the defendant's position. If the defendant contests guilt, counsel has a duty to argue that the State did not prove beyond a reasonable doubt one or more of the elements of the offense. Lawyers "are advocates, and bound by professional duty to present all available evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views." Gagnon v. Scarpelli, 411 U.S. 778, 787 (1973). Indeed, "no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment." Herring, 422 U.S. at 862.

Counsel owed appellant a duty of loyalty that the Supreme Court has described as "the most basic of counsel's duties." Strickland, 466 U.S. at 692. He breached that duty when he conceded during summation that appellant acted unreasonably, where the defensive theory was that appellant reasonably believed that the money was authentic. No sound strategy could justify counsel's conduct. Indeed, he admits that this argument was unsound.

Finally, it is telling that the Court of Appeals severed this allegation of

11

deficient performance from the other seven, choosing to presume that the others constituted deficient performance but did not cause prejudice. That decision demonstrates loudly that the Court of Appeals could not avoid the prejudicial effect of counsel's concession, which was especially harmful where it occurred immediately before the jury began deliberations. See Brown v. State, 978 S.W.2d 708, 715 (Tex. App.—Amarillo 1998, pet. ref'd) (". . . the harm arose immediately before the jury was to retire and deliberate. Thus, its potential effect was not as attenuated as it would have been had the misconduct occurred elsewhere."). The court's decision not to presume that counsel's concession was deficient and consider its prejudicial effect along with the other allegations of deficient performance begs the question: "Is this one of those cases where counsel's conduct was so prejudicial, it could not have been the result of a sound strategy?"

The Court should grant review because the Court of Appeals decided an important question of law in conflict with the applicable decisions of the Supreme Court and another court of appeals; so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of the Court's power of supervision; and failed to address the issue raised by appellant's arguments. TEX. R. APP. P. 47.1, 66.3(a), 66.3(c), & 66.3(f).

## SECOND GROUND FOR REVIEW

**THE FOURTEENTH COURT OF APPEALS ERRED IN APPLYING THE WRONG STANDARD OF REVIEW WHEN IT ANALYZED THE PREJUDICIAL EFFECT OF APPELLANT'S REMAINING ALLEGATONS OF DEFICIENT PERFORMANCE INDIVIDUALLY INSTEAD OF CUMULATIVELY, CONTRARY TO STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984), AND EX PARTE AGUILAR, No. AP-75,526, 2007 WL 3208751 (TEX. CRIM. APP. 2007).**

### A.    Statement Of Facts

In addition to appellant's allegation that counsel performed deficiently in making a prejudicial concession during summation, appellant raised seven other allegations of deficient performance in the Court of Appeals:

1.    Counsel failed to object to inadmissible testimony that most suspects cooperate during investigations and that, in other cases, cooperative suspects consented to searches that revealed contraband;

2.    counsel elicited improper opinion testimony that one of the lead police investigators believed that appellant knew the money was counterfeit;

3.    counsel elicited inadmissible testimony that guilty people in counterfeit cases profess their innocence;

4.    counsel opened the door to inadmissible testimony that the State's expert on counterfeit money had never seen Nigerians victimize other Nigerians in a scheme to defraud;

5.    counsel failed to object to improper cross-examination regarding what the defense witnesses would have done had they received a package containing a large amount of cash;

6.    counsel failed to object to the prosecutor's comment that appellant had engaged in plea negotiations and, when responding to the prosecutor,

13

acknowledged that appellant made admissions during plea negotiations; and

7. counsel failed to object to the prosecutor improperly asking appellant if the lead case agent was lying about the money being counterfeit.

Counsel provided an affidavit in the habeas proceeding in which he admitted that none of these acts or omissions was based on sound trial strategy (C.R. 206-12; AX 1). The trial court ignored counsel's affidavit and concluded that he did not perform deficiently in any of these seven instances.

The Court of Appeals presumed that counsel performed deficiently in all seven instances and determined whether they caused prejudice. Appendix at 10. In conducting the prejudice analysis, it stated that "counsel's alleged errors are examined not as isolated instances, but in the context of the overall record." Appendix at 11 (citing Ex parte Menchaca, 854 S.W.2d 128, 132 (Tex. Crim. App. 1993)). It then did the exact opposite by analyzing the prejudicial effect of each of the seven allegations of deficient performance individually, instead of considering their cumulative effect on the entire trial. Appendix at 11-19.

B. **Argument And Authorities**

The Court of Appeals applied the wrong standard of review when it concluded that each allegation of deficient performance, standing alone, did not adversely affected the outcome of the trial. This is an erroneous application of the standard for determining prejudice. Rather, a court reviewing an ineffective-

14

assistance-of-counsel claim is required to consider the *cumulative* effect of each act or omission that constitutes deficient performance and determine whether there is a reasonable probability that, but for these errors, considered collectively, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 693-96. This Court reiterated that standard of review in 2007 in Ex parte Aguilar, 2007 WL 3208751 at *3.[5] The Court of Appeals' legal conclusions constitute an unreasonable application of Strickland and Aguilar in light of the evidence presented at the trial and in the habeas proceeding.

This case was defensible and turned on whether the jury believed appellant's testimony that he did not know the money was counterfeit. His credibility was the most important issue. As a result of counsel's errors, the jury heard inadmissible, prejudicial testimony that the police believed that appellant was guilty; that cooperative suspects in other cases were guilty; that guilty people protest their innocence; and that Nigerians do not victimize other Nigerians. The prosecutor improperly asked appellant if the lead case agent was lying. The harmful, cumulative effect of this testimony was compounded when counsel allowed the jury to hear that appellant had engaged in plea negotiations during which he made admissions. Further damaging appellant's credibility, counsel allowed the State to elicit improperly from defense witnesses that they would not have acted the same as

---

[5] This case demonstrates why Aguilar should have been published. This Court denied motions to publish it in 2007 and 2013.

appellant had they received a package with a large amount of cash. Collectively, these errors place the State's case in a much more favorable light and appellant's case in a much less favorable light. But for these errors, there is a reasonable probability that the outcome of the proceeding would have been different.

Post-Strickland, the Supreme Court has recognized that the essence of an ineffective assistance of counsel claim is that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). When examining prejudice, the question is not whether appellant more likely than not would have received a different verdict but for counsel's errors, but whether, in light of the errors, he received a trial resulting in a verdict worthy of confidence. Cf. Kyles, 514 U.S. at 434. Appellant's verdict is not worthy of confidence.

The Court should grant review because the Court of Appeals decided an important question of law in conflict with the applicable decisions of this Court and the Supreme Court. TEX. R. APP. P. 66.3(c).

## CONCLUSION

The Court should grant review and order full briefing to resolve these important issues.

16

Respectfully submitted,

/S/ *Josh Schaffer*

Josh Schaffer
State Bar No. 24037439
1021 Main St., Suite 1440
Houston, Texas 77002
(713) 951-9555
(713) 951-9854 (facsimile)
josh@joshschafferlaw.com

Attorney for Appellant
CHIDIEBELE GABRIEL OKONKWO

## CERTIFICATE OF SERVICE

I served a copy of this document on Gail Kikawa McConnell, assistant district attorney for Fort Bend County; and on Lisa McMinn, State Prosecuting Attorney, by electronic mail on October 28, 2015.

/S/ *Josh Schaffer*
Josh Schaffer

## CERTIFICATE OF COMPLIANCE

The word count of the countable portions of this computer-generated document specified by Rule of Appellate Procedure 9.4(i), as shown by the word-processing program that was used to create the document, is 2,940 words. This document complies with the typeface requirements of Rule 9.4(e), as it is printed in a conventional 14-point typeface with footnotes in 12-point typeface.

/S/ *Josh Schaffer*
Josh Schaffer

17

## <u>APPENDIX</u>

Opinion of the Fourteenth Court of Appeals



In The

# Fourteenth Court of Appeals

### NO. 14-14-00835-CR

## EX PARTE CHIDIEBELE GABRIEL OKONKWO

**On Appeal from the 434th Judicial District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 09-DCR-052539**

# M E M O R A N D U M   O P I N I O N

In this appeal from the trial court's denial of habeas-corpus relief, the applicant asserts the trial court abused its discretion in denying relief based upon the alleged ineffective assistance of applicant's trial counsel. We affirm.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Appellant/applicant Chidiebele Gabriel Okonkwo appeals the trial court's order denying him habeas-corpus relief as to his forgery conviction. The evidence at applicant's trial for this offense showed applicant attempted to obtain a money

order from a grocery store using counterfeit currency.[1]  Applicant testified that he received the cash in the mail from a man in Nigeria named Bada Tunde, who sent him $60,000 in $100 bills in exchange for applicant's help in purchasing a car from the United States and shipping it to Nigeria.  Applicant testified that he hid this money in a tin can in his bathroom and suspected the money might be counterfeit.  The bills had a "real strong gassy smell," glitter that rubbed off the bills, and several bills had the same serial number.  According to applicant, he tested the bills with a counterfeit-detection pen and determined they were not counterfeit.

Applicant testified that he intended to obtain $5000 in money orders, but he purchased the money orders in odd amounts.  Applicant purchased $832 from one grocery store and $568 from a second store before attempting to use the money to purchase a money order from a third grocery store.  By making money-order purchases in these amounts, applicant was able to avoid identifying himself, as he would have been required to do if he had made just one money-order purchase for the entire amount he sought to obtain from the separate money orders.  The clerks at the third grocery store suspected the money was counterfeit and refused to give applicant a money order.  According to applicant, as he drove out of the store parking lot, he spotted a police car, and then drove back into the parking lot, where police detained him.  When a police officer asked applicant what he was doing at

---

[1] Because no party offered into evidence in the habeas proceeding the reporter's record from the trial that resulted in applicant's forgery conviction ("Reporter's Record"), our appellate record does not contain the Reporter's Record.  Though the better course would have been to submit the Reporter's Record as evidence, the trial court considered the Reporter's Record in the habeas proceeding and cited it in the court's findings of fact and conclusions of law.  The parties cited the Reporter's Record, and the trial court relied extensively on the Reporter's Record in making the court's habeas ruling.  On this record, we conclude that the trial court took judicial notice of the Reporter's Record.  The Reporter's Record is contained in this court's files in Cause No. 14-11-00037-CR, applicant's direct appeal of his conviction, which is a related proceeding involving the same or nearly the same parties as applicant's appeal today.  Under these particular circumstances, on our own motion, we take judicial notice of the Reporter's Record.

2

the store, applicant responded that he was buying groceries and did not mention anything about the money order. At trial, the State presented expert testimony from Agent Audrey Gibson, a United States Secret Service Agent, who concluded the bills were counterfeit.

The jury found applicant guilty of forgery. The trial court assessed punishment at three years' confinement, suspended the imposition of the sentence, and placed applicant on community supervision for a term of three years. Applicant appealed his conviction, and this court reversed the conviction, holding that applicant was denied effective assistance of counsel because his trial counsel failed to request a jury instruction on applicant's mistake-of-fact defense. *See Okonkwo v. State*, 357 S.W.3d 815, 818, 821 (Tex. App.—Houston [14th Dist.] 2011), *rev'd*, 398 S.W.3d 689 (Tex. Crim. App. 2013). The Court of Criminal Appeals reversed this court's judgment and rendered judgment affirming the trial court's judgment. *See Okonkwo v. State*, 398 S.W.3d at 695–97. In his application for habeas-corpus relief, applicant asserted he received ineffective assistance of counsel in various respects other than his trial counsel's failure to request a jury instruction on applicant's mistake-of-fact defense. The trial court denied relief. Applicant now challenges that ruling on appeal.

## II. ANALYSIS

In one issue, applicant challenges the trial court's denial of relief, arguing that applicant was denied effective assistance of counsel at the guilt/innocence phase of trial on the forgery offense.

### A. State's Mootness Argument

As an initial matter, the State argues that this appeal is moot because applicant has been released early from community supervision. The record reflects

3

that shortly after applicant perfected appeal from the trial court's habeas-corpus order, the trial court signed an order in which the court terminated applicant's community supervision after applicant had completed fifteen months of community supervision.

Texas Code of Criminal Procedure article 11.072 establishes the procedures for an application for a writ of habeas corpus in felony or misdemeanor cases in which the applicant seeks relief from a judgment of conviction ordering community supervision. Tex. Code Crim. Proc. Ann. art. 11.072 § 1 (West 2015). Article 11.072, entitled "Procedure in Community Supervision Case," provides as follows:

> At the time the application is filed, the applicant must be, or have been, on community supervision, and the application must challenge the legal validity of
>
> (1) the conviction for which or order in which community supervision was imposed; or
>
> (2) the conditions of community supervision.

When applicant filed his habeas-corpus application, he was or had been on community supervision, and he challenged the legal validity of the conviction for which community supervision was imposed. The trial court denied his application, and applicant timely appealed.[2] *See* Tex. Code Crim. Proc. Ann. art. 11.072 § 8.

Nonetheless, the Texas Legislature has indicated that an applicant must be confined or under restraint for habeas-corpus relief to be appropriate. *See* Tex. Code Crim. Proc. Ann. art. 11.23 (West 2015) (stating that "[t]he writ of habeas corpus is intended to be applicable to all such cases of confinement and restraint, where there is no lawful right in the person exercising the power, or where, though

---

[2] In his application, applicant challenged both his conviction and the conditions of community supervision, but this appeal deals only with applicant's challenge to his conviction.

the power in fact exists, it is exercised in a manner or degree not sanctioned by law"); *Ex parte Schmidt*, 109 S.W.3d 480, 481–84 (Tex. Crim. App. 2003). The State argues that this appeal is moot because appellant is not confined or under restraint and his community supervision has been terminated.

The Legislature has broadly defined the terms "confined" and "restraint." *See* Tex. Code Crim. Proc. Ann. art. 11.21 (West 2015) (stating that "confined" refers not only to the actual corporeal and forcible detention of a person, but likewise to any coercive measures by threats, menaces or the fear or injury, whereby one person exercises a control over the person of another, and detains him within certain limits"); *id*. art. 11.22 (West 2015) (stating that "restraint" means "the kind of control which one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right"). This court has held that an individual is confined or under restraint, as necessary to seek habeas-corpus relief, if the individual faces collateral consequences resulting from the conviction in question. *See Le v. State*, 300 S.W.3d 324, 326–27 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Ex parte Wolf*, 296 S.W.3d 160, 166–67 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). An individual faces collateral consequences if the conviction may have detrimental collateral consequences in some future proceeding. *Tatum v. State*, 846 S.W.2d 324, 327 (Tex. Crim. App. 1993). Potential deportation as a result of the conviction constitutes sufficient collateral consequences to support habeas-corpus jurisdiction and to prevent a habeas-corpus case from being moot. *See Le*, 300 S.W.3d at 326. *See also Fiswick v. United States*, 329 U.S. 211, 221–23, 67 S.Ct. 224, 91 L.Ed. 196 (1946) (concluding that court had jurisdiction to review lawfulness of conviction even though that sentence already had been served because of potential immigration consequences of conviction, including being

subject to deportation and possible difficulty in establishing good character for naturalization purposes).

The record reveals that applicant holds a "green card." Applicant argues that he will be subject to deportation if his conviction is not set aside. Because potential deportation is a collateral consequence, applicant is confined or under restraint for habeas-corpus purposes and may seek habeas-corpus relief even though he is no longer subject to community supervision. *See Le*, 300 S.W.3d at 326. We conclude that this appeal is not moot.

## B. Ineffective-Assistance-of-Counsel Claims

In his application for habeas-corpus relief, appellant asserted various acts or omissions of his trial counsel that he claims constituted ineffective assistance of counsel. Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. CONST. art. I, §10. This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective assistance of counsel, appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland,* 466 U.S. at 688–92. The reviewing court indulges a strong presumption that (1) counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy, and (2) that counsel's conduct fell within the wide range of reasonable professional assistance. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To overcome the presumption of reasonable professional assistance, any allegation of

6

ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the ineffectiveness. *See id*. at 814.

The applicant for a writ of habeas corpus has the burden of proving the applicant's allegations by a preponderance of the evidence. *Ex parte Wolf*, 296 S.W.3d at 166. We review a trial court's ruling on an application for writ of habeas corpus for an abuse of discretion. *Ex parte Fassi*, 388 S.W.3d 881, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We decide whether a trial court abused its discretion by determining whether the court acted without reference to any guiding rules or principles, or in other words, whether the court acted arbitrarily or unreasonably. *Ex parte Wolf*, 296 S.W.3d at 166. A trial court abuses its discretion when its decision lies outside of the zone of reasonable disagreement. *Id*.

In reviewing the trial court's ruling on a habeas-corpus application, we must review the record evidence in the light most favorable to the trial court's ruling, regardless of whether the court's findings are implied or explicit. *Ex parte Fassi*, 388 S.W.3d at 886. We review de novo the ultimate question of whether there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's allegedly deficient performance. *See Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005); *Ex parte Fassi*, 388 S.W.3d at 887. We must uphold the trial court's judgment as long as it is correct on any theory of law applicable to the case. *See Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001) (per curiam).

On appeal, applicant asserts that the trial court erred by not finding ineffective assistance of counsel as to eight acts or omissions of appellant's trial

7

counsel.[3]

### 1. *Counsel's Closing Argument*

In the eighth ground of ineffective assistance, applicant asserts that his trial counsel conceded during closing argument that applicant acted in a "totally unreasonable way that lacks common sense even at a basic level." According to applicant, this concession amounted to ineffective assistance because the argument was affirmatively prejudicial.

In an affidavit, applicant's trial counsel stated that he was convinced by the end of the trial that the jury believed applicant was either stupid or guilty, so he argued that applicant was stupid. Counsel stated that he should have crafted the argument in a different way so as to make the same point without conceding that applicant's behavior was unreasonable. The trial court concluded that it was a reasonable trial strategy to acknowledge applicant's odd behavior and shortcomings upfront. Applicant argues that this finding does not directly address counsel's conduct in conceding that applicant acted unreasonably.

Applicant was indicted for forgery. The jury charge explained that "[a] person commits forgery if he forges a writing with intent to defraud or harm another." The jury was charged that "[a] person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire in the conduct [to] cause the result."

The record supports the trial court's finding that counsel's acknowledgment of applicant's odd behavior upfront was a sound trial strategy. *See Ex Parte Rogers*, 369 S.W.3d 858, 862 (Tex. Crim. App. 2012). The record reveals that the jury received evidence that suggested applicant knew the money was counterfeit.

---

[3] Applicant complained of ten acts or omissions of his trial counsel in his application in the trial court, but he has not argued two of these acts or omissions on appeal.

To convince the jury that applicant did not know the money was counterfeit, counsel sought to gain credibility with the jury by admitting that applicant's behavior seemed odd. Trial counsel then attempted to explain away the oddity. This decision was a calculated risk by trial counsel. *See Alexander v. State*, 282 S.W.3d 701, 706 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (noting that appellate courts cannot find deficiency from a calculated risk by trial counsel that simply did not work).

Applicant objects to counsel's use of the term "unreasonable" as a descriptor for applicant's actions. But, the jury was not required to determine whether or not applicant's actions were reasonable; the inquiry put to the jury was whether or not applicant intended to pass counterfeit money. In light of the charge and question before the jury, the fact that counsel used the term "unreasonable" in describing applicant's actions does not make counsel's strategy deficient. Applicant's trial counsel took a calculated risk in arguing to the jury that applicant was naïve. That risk was reasonable given the evidence presented. *See id*. The record contains sufficient evidence to support the trial court's finding that counsel's legal representation of applicant did not fall below an objective standard of reasonableness. Under the applicable standard of review, the trial court did not abuse its discretion in concluding that applicant did not prove by a preponderance of evidence the first prong of the test for ineffective assistance of counsel. *See Ex parte Rogers*, 369 S.W.3d at 862; *Alexander*, 282 S.W.3d at 706; *Taylor v. State*, 947 S.W.2d 698, 704 (Tex. App.—Fort Worth 1997, pet. ref'd). Applicant's argument is without merit.

### 2. *Other Alleged Deficiencies*

Applicant asserts that trial counsel was deficient for seven additional reasons. The trial court found trial counsel was not deficient in any respect. There

9

is no requirement that an appellate court address the prongs of the test for ineffective assistance of counsel in any particular order. *Strickland*, 104 S.Ct. at 2069; *Hagens v. State*, 979 S.W.2d 788, 793 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Nor is there a requirement that appellate courts address both prongs of the test if one prong is not satisfied. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069; *Hagens*, 979 S.W.2d at 793. The trial court made specific findings that the first, second, fourth, and sixth presumed deficiencies either did not affect applicant's defense or were not prejudicial under the second prong of *Strickland*. Although the trial court did not make findings regarding parts of applicant's third, fifth, and seventh presumed deficiencies, and the trial court did not make an express conclusion of law as to whether applicant suffered prejudice based on the other seven alleged deficiencies, the trial court made fact findings supporting a failure to prove the second prong of *Strickland*. Because we review the second prong of *Strickland* de novo and the trial court made findings that address prejudice, we conclude the trial court made sufficient fact-findings in this regard to enable appellate review. We are to uphold the trial court's judgment on any ground supported by the record. *See Ex parte Fassi*, 388 S.W.3d at 887. We presume for the sake of argument that counsel was deficient for these seven reasons, and we determine whether the alleged deficiencies caused applicant to suffer prejudice.

Presuming, for the sake of argument, that counsel was deficient for the reasons expressed in applicant's first seven grounds, applicant still had the burden of proving in the trial court a reasonable probability that the result of the proceeding would have been different but for trial counsel's allegedly deficient performance. *Ex parte Lane*, 303 S.W.3d 702, 709 (Tex. Crim. App. 2009). When assessing the second prong of the test for ineffective assistance of counsel,

counsel's alleged errors are examined not as isolated incidents, but in the context of the overall record. *Ex parte Menchaca*, 854 S.W.2d 128, 132 (Tex. Crim. App. 1993). Thus, we examine and clarify each of applicant's grounds and determine whether the trial court's specific findings of fact with respect to each ground are supported by the record before analyzing whether the record supports the conclusion that applicant did not show prejudice under the second prong of *Strickland*.

First, applicant asserts that he received ineffective assistance of counsel because counsel failed to object to testimony from three different police officers (Captain Michael Berezin, Sergeant Saul Luera, and Officer Andrew Robb) that they had conducted searches revealing contraband in circumstances where the suspect cooperated with their investigation. According to applicant, counsel was deficient for failing to object to this testimony because it is irrelevant and inadmissible under Texas Rules of Evidence 401, 403, 701, or 702.

Applicant contends that this testimony showed that guilty people consent to searches. If the officer's testimony had shown guilty people consent to searches, the officers' testimony may have undermined a possible inference by the jury that applicant's consent to searches showed he did not believe he had committed a crime. But, the officers' testimony did not show that guilty people consented to searches. The officers' testimony did not address whether the other suspects were responsible for the contraband found during the searches or whether those suspects had acted with criminal intent. The officers did not state that the other suspects were guilty. Thus, the record supports the trial court's determination that the testimony did not relate to applicant's mental state. The record, and the trial court's finding of fact, support the conclusion that the officers' testimony did not undermine the jury's ability to infer that applicant consented to the searches

11

because he did not realize the money was counterfeit. *See id.*; *Ex parte Martinez*, 330 S.W.3d 891, 904 (Tex. Crim. App. 2011). We conclude this testimony did not undermine applicant's defensive theory. At trial, applicant argued that he did not intend to commit forgery because he did not know the money was counterfeit. The trial court determined that applicant's mental state was the only contested issue and that the officers' testimony did not relate to that issue.

The trial court found the evidence of applicant's guilt strong. According to the trial court, the only contested issue at trial was whether applicant knew the money he passed was counterfeit. The trial court made a finding that the following evidence strongly suggests applicant is guilty:

- Applicant discarded the mailing container in which he received the stacks of $100 bills.

- Applicant hid approximately $54,000 of the bills in a tin can in his master bathroom.

- The money applicant hid in the tin can had a "strong gassy" odor, the text was off, "glitter" rubbed off the money, and there were multiple bills with the same serial number.

- Before attempting to use the money to purchase a money order at one store, applicant made purchases for money orders in the amounts of $568 and $852 at two other stores.

- Applicant kept his money order purchases below the amounts at which he would need to produce identifying information in case the currency was counterfeit.

- When applicant was turned away from the third store, applicant drove out of the parking lot, spotted a police car, and drove back into the parking lot. He was subsequently detained by a police officer and asked what he was doing. Applicant responded that he was buying groceries.

The record supports the trial court's findings that the evidence of applicant's guilt is strong. Applicant failed to prove by a preponderance of the evidence that, but

for counsel's allegedly deficient performance, the result of the proceeding would have been different. *See Ex parte Lane*, 303 S.W.3d at 712.

Second, applicant asserts that he received ineffective assistance of counsel because counsel elicited testimony in cross-examining an investigating police officer, Captain Berezin, that Captain Berezin suspected both that (1) applicant knew the money was counterfeit and (2) applicant was making counterfeit money. Applicant complained in the trial court about Captain Berezin's testimony that he suspected early on that applicant knew the money was counterfeit and he believed that applicant "possibly" was making counterfeit money. Captain Berezin testified that if those suspicions were not present, police would not have been investigating the matter. Applicant asserts that this testimony was improper expert testimony under Texas Rules of Evidence 701 and 702.

Captain Berezin testified three times that he did not form an opinion as to applicant's guilt. The trial court found that while Captain Berezin testified that he would not have been investigating the matter if he did not suspect applicant knew the money was counterfeit, or that applicant was possibly making counterfeit money, the testimony did not go to the ultimate issue of whether applicant knew that the currency was forged. The jury knew that the police investigated applicant and that the police ultimately arrested applicant. Based on the grocery-store clerk's testimony, the jury almost certainly presumed that the police at least suspected applicant had committed forgery. Captain Berezin explained that, although police had that suspicion, he did not form any opinion as to whether or not applicant actually knew that the currency was forged. Applicant does not explain how Captain Berezin's testimony, that the police were investigating applicant because they suspected he had committed the crime, was any more damaging than the facts the jury already knew. *See Thacker v. State*, 999 S.W.2d

13

56, 68 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (holding that failure to object to inadmissible evidence was not ineffective assistance of counsel because other evidence provided jury same information); *Ex parte Martinez*, 330 S.W.3d at 903. The record, therefore, contains evidence that supports the trial court's finding that this testimony did not affect the jury's verdict. As detailed above, the record evidence also supports the trial court's finding that the evidence of applicant's guilt is strong. Applicant failed to prove by a preponderance of the evidence that, but for counsel's allegedly deficient performance, the result of the proceeding would have been different. *See Ex parte Lane*, 303 S.W.3d at 712.

Third, applicant asserts that counsel elicited inadmissible testimony from Secret Service Agent Audrey Gibson that it was common for individuals caught with counterfeit money to deny the money is counterfeit. Applicant asserts that the testimony was inadmissible because it was irrelevant under Texas Rules of Evidence 401, 402, 701, and 702. The trial court found that applicant cooperated with the investigation and consented to searches of his person, car, and residence. According to the trial court, counsel's performance was not deficient because counsel contrasted applicant's behavior with the behavior of individuals who did not cooperate with investigations. On appeal, applicant highlights the ways in which he did not cooperate with the investigation and concludes that Agent Gibson's testimony was prejudicial because it communicated to the jury that guilty people sometimes profess their innocence. But, Agent Gibson's testimony does not require that conclusion. Agent Gibson testified that she had experience with individuals who claimed that counterfeit money was real and attempted to get the money back. Agent Gibson did not testify that these people were guilty or that they knew the money was counterfeit, so her testimony did not address the only contested issue in the case. Given the fact that Agent Gibson's testimony did not

14

address the only contested issue in the case and the support in the record for the trial court's finding that the evidence of applicant's guilt is strong, applicant failed to prove by a preponderance of the evidence that but for counsel's allegedly deficient performance, the result of the proceeding would have been different. *See Ex parte Lane*, 303 S.W.3d at 712.

Fourth, applicant asserts that counsel was deficient in "opening the door" to the admission of testimony from Agent Gibson that Agent Gibson had never seen Nigerians prey on other Nigerians. During cross-examination, counsel asked Agent Gibson if it were possible for Nigerians to prey on other Nigerians. Agent Gibson responded that it was possible. On redirect examination, the prosecutor elicited testimony from Agent Gibson that Agent Gibson had never seen a Nigerian target another Nigerian. Applicant asserts that counsel was deficient in "opening the door" to the admission of this testimony because it would have been inadmissible under Texas Rules of Evidence 401, 403, 701, and 702 if counsel had not opened the door.

Agent Gibson testified she had been working on the counterfeit squad only six months. The trial court found Agent Gibson's testimony did not affect applicant's ability to present his defensive theory. Applicant argues that he suffered prejudice from this testimony because Agent Gibson testified that Nigerians do not victimize other Nigerians. But, Agent Gibson's testimony was only that she had not seen such victimization in her experience. Agent Gibson also testified that it was possible for Nigerians to be victims of schemes by other Nigerians. This testimony bolstered applicant's defense because Agent Gibson testified that there was a possibility applicant could have been targeted, even if she had not seen a Nigerian target another Nigerian. Particularly in light of the supportive testimony counsel obtained by "opening the door," and the support in

15

the record for the trial court's finding that the evidence of applicant's guilt is strong, we conclude that the record supports the trial court's finding that this testimony did not prejudice applicant's defensive theory. *See Ex parte Lane*, 303 S.W.3d at 712.

Fifth, applicant asserts that counsel failed to object to improper cross-examination testimony from three defense witnesses regarding what those witnesses would have done had they received a package containing a large amount of cash. Applicant asserts that the testimony of all three witnesses is inadmissible under Texas Rules of Evidence 401 and 403. According to applicant, the testimony of the second and third witnesses also constitutes improper impeachment of a character witness under Texas Rules of Evidence 405(a) and 608(a).

The first witness, Joan Nwuli, testified regarding applicant's conduct after applicant was arrested. On cross-examination, Nwuli testified over counsel's objection that she would call police if she received $54,600 in a tin can. But counsel did not object to a question that elicited testimony from Nwuli that, if she received a tin can containing $54,600, she "definitely" would not deposit that money in the bank. Nwuli then explained that she has more "street smarts" than applicant. The trial court found this testimony provided an explanation for applicant's unusual behavior. The record supports the trial court's finding that testimony supported applicant's defensive theory by offering a potential explanation for applicant's behavior—he simply did not realize the money was counterfeit.

The second witness, Chris Okeke, testified as a character witness on applicant's behalf. Applicant asserts that counsel provided ineffective assistance because counsel did not object to Okeke's testimony that Okeke did not keep large amounts of cash in a tin can in his bathroom or in tubes of lotion. The third

16

witness, Myke Okafor, testified on cross-examination that he would call the police if he received a large amount of cash in the mail because he would think the money was counterfeit. Applicant asserts his trial counsel was ineffective for failing to object to this testimony.

The testimony from Okeke and Okafor did not contradict applicant's testimony. Applicant's defense was that applicant did not know the money was counterfeit and applicant argued that he was naïve. That a character witness testified that if he received a large amount of money in the mail he would have thought it was counterfeit did not undercut applicant's theory. We conclude, in light of the strong evidence of applicant's guilt, applicant failed to prove by a preponderance of the evidence that but for counsel's allegedly deficient performance, the result of the proceeding would have been different.

Sixth, applicant asserts that counsel was deficient in failing to object to a comment that insinuated applicant had participated in plea negotiations and in making a comment insinuating that applicant made statements or admissions at plea negotiations. Applicant asserts that the jury should not have heard any reference to his participation in plea negotiations or to admissions allegedly made as part of that process. *See* Tex. R. Evid. 410(4).

Mentioning the accused's participation in plea negotiations can be harmful because the jury could infer that individuals do not enter into plea negotiations if they are innocent. *See Canfield v. State*, 429 S.W.3d 54, 74 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). There is a risk jurors would conclude that an innocent person would not contemplate admitting guilt. *Id.* But, the potential harm depends on the context of the trial. *See id.*; *Neugebauer v. State*, 974 S.W.2d 374, 377 (Tex. App.—Amarillo 1998, pet. ref'd).

At trial, counsel elicited testimony from applicant that he met with the

17

prosecutor and offered to testify before the grand jury but was not allowed to testify. The prosecutor objected on the grounds that this testimony "goes into some plea negotiations and whole other mounds of stuff in this case." Counsel responded, "I'm not asking him any statements or admissions or any discussions during the plea negotiations, just the fact that he volunteered to come and discuss it, which relates to his state of mind." The trial court found any deficiency in these statements did not cause applicant prejudice.

The record shows the testimony before the jury was somewhat ambiguous. The prosecutor objected to the testimony that applicant sought to testify before the grand jury on the grounds that it referenced plea negotiations and counsel responded to that objection by stating that it did not refer to the plea negotiations. The trial court found "counsel simply wished to show that applicant had volunteered to come and discuss his case with the prosecutor, a fact 'relating to his state of mind.'" Counsel did not affirmatively state that plea negotiations occurred. Still, even though counsel's comment was made in the context of refuting the State's assertion, applicant complains the jury might have concluded that counsel engaged in plea negotiations because counsel referred to "*the* plea negotiations."[4] Yet, the jury also could have concluded that counsel simply was responding to the State's objection fully, by explaining that the testimony did not refer to a statement, admission, or discussion during plea negotiations. Accordingly, the record contains evidence that supports the trial court's finding that the statement "simply" showed applicant volunteered to discuss the case with the prosecutor.

Although we acknowledge the possibility that applicant's counsel's statement caused applicant some harm, we conclude, based on the strength of the

---

[4] Emphasis added.

evidence of applicant's guilt, and the ambiguous nature of the stray reference to plea negotiations, applicant did not prove that but for the statement, the result of the proceeding would have been different. *See Canfield*, 429 S.W.3d at 74.

Seventh, applicant asserts that counsel was deficient in failing to object to the prosecutor's query asking applicant whether Agent Gibson was lying when she said the money was counterfeit. Applicant responded to this question by stating that he thought the money might be counterfeit, but he denied saying Agent Gibson lied. Applicant asserts that this question was impermissible because a witness may not give an opinion regarding the truth or falsity of another witness's testimony.

Applicant does not specifically state how the question caused him to suffer prejudice. Rather than attack Agent Gibson's testimony, applicant stated that he thought the money might be counterfeit. Applicant's defense strategy was to explain how he did not know the money was counterfeit and did not intend to pass counterfeit money. His answer that Agent Gibson might be right about the money being counterfeit did not affect his defense. He denied stating that Agent Gibson was lying. We conclude, in light of the strong evidence of applicant's guilt, applicant failed to prove by a preponderance of the evidence that but for counsel's allegedly deficient performance, the result of the proceeding would have been different. *See Ex parte Lane*, 303 S.W.3d at 712.

Based on the evidence presented against applicant and the nature of all seven of the presumed deficiencies, we conclude that the record supports the conclusion that applicant did not show a reasonable probability that the result of the proceeding would have been different but for any one or more of the alleged deficiencies. Accordingly, the record supports a denial of habeas-corpus relief as to the first through seventh grounds based on the second prong of *Strickland*. *See id.*; *Ex parte Napper*, 322 S.W.3d 202, 250 (Tex. Crim. App. 2010); *Adekeye v.*

*State*, 437 S.W.3d 62, 75 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

For the foregoing reasons, applicant's sole appellate issue is overruled and the trial court's order denying habeas-corpus relief is affirmed.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Jamison and Busby.

Do Not Publish — TEX. R. APP. P. 47.2(b).